The President, Directors, and Company of the Miners' Bank of Dubuque, Plaintiffs in Error, *v.* The State of Iowa, on the Relation of the District Prosecuting Attorney.

Where a bank was chartered and its charter repealed by the legislature of a Territory, the question of the validity of the repealing act cannot be brought before this court under the twenty-fifth section of the Judiciary Act.

The power of review is confined by that section to certain laws passed by States, and does not extend to those passed by territorial Legislatures.

This case was brought up, by writ of error, from the Supreme Court for the Second Judicial District of the State of Iowa. Proceedings were commenced when Iowa was a Territory, but in the progress of the cause she was admitted as a State. The pleadings set forth the facts of the case.

At the November term, 1845, of the District Court of Dubuque county, in the Territory of Iowa, the District Attorney of the United States filed the following information:

James Grant, district prosecutor of the third Judicial District, who prosecutes for the United States, on leave granted, comes into said District Court of Dubuque county, at the court-house in Dubuque county, on the first Monday in November, in the year of our Lord one thousand eight hundred and forty-five, and for said United States gives the court to be informed and understand, that John Wharton, Patrick Quigley, Robert Waller, John Thompson, Peter Waples, Jesse P. Farley, and Timothy Davis, for the space of two months last past, and since, have had and still use, without any legal authority, the liabilities and franchises of President, Directors, and Company of the Miners' Bank of Dubuque, and discount bills, loan money, buy and sell bills of exchange, and do all such other acts and things as bodies corporate for banking usually do.

All which privileges, liabilities, and franchises, the said defend-

ants have usurped, and still do usurp, upon said United States, to the great damage and prejudice thereof.

Whereupon the said attorney prays the aid of this court in the premises, and due process of law against said defendants, to answer to said United States by what warrants they claim to have and enjoy the liabilities, privileges, and franchises aforesaid.

JAMES GRANT, *Dist. Pros.*

Whereupon the attorney for the Bank filed the following plea, viz.:

And the said John Wharton, Patrick Quigley, Robert Waller, John Thompson, Peter Waples, Jesse P. Farley, and Timothy Davis, President, Directors, and Co. &c.

As to the said liabilities, franchises, and privileges, of the said President, Directors, and Company, of the Miners' Bank of Dubuque, say that, by an act of the Legislature of Wisconsin, approved on the thirtieth day of November, in the year of our Lord one thousand eight hundred and thirty-six, which act, with alterations, was approved by Congress on the third day of March, in the year of our Lord one thousand eight hundred and thirty-seven, said President, Directors, and Company were duly incorporated as a company or body politic and corporate, with the privileges, liabilities, and franchises aforesaid; that by an act of Congress in session on the 12th day of June, in the year of our Lord one thousand eight hundred and thirty-eight, the Territory of Wisconsin was divided, and the Territory of Iowa formed therefrom; and by this warrant the said defendants have, and during the time in said information mentioned, and still use the liabilities, privileges, and franchises, as they well might, and still may; without this, that said defendants have usurped, or do now usurp, said liabilities, franchises, and privileges, in manner and form as by said information is supposed; all which the said defendants are ready to verify; and wherefore they pray judgment, and that said liberties, franchises, and privileges, above by them claimed, may be allowed and adjudged them, and that they may be herein dismissed, &c.

DAVIS, *Att'y for Bank.*

The replication of the plaintiff was as follows:—

And the said plaintiffs, for replication to said plea of said defendants, say, that the act of the Legislature of Wisconsin, by which said defendants claim the liberties, franchises, and privileges aforesaid, by an act of the Legislature of Iowa Territory, within whose jurisdiction the said corporate body existed, after the division of the Territory of Wisconsin, in force the twenty-first day of May, in the year of our Lord one thousand eight hundred and forty five, the said liabilities, privileges, and franchises, was repealed,

disallowed, and declared for naught; and this he is ready to verify; wherefore he prays judgment, &c.

JAMES GRANT, *Dist. Pros.*

The defendants rejoined, but afterwards had leave to file the following amended rejoinder :—

The said defendants, as to the said replication of the said plaintiffs to the plea of defendants, say, that they ought not to be barred of the franchises, liberties, and privileges, secured to them by their aforesaid charter, because they say that the act of the said Legislature of Iowa aforesaid, whereby it is supposed the said charter was repealed, was passed without the said corporation (defendants) having first failed to go into operation, and without having abused or misused its privileges; and this they are ready to verify.

DAVIS & SMITH, *Att'ys for Defendants.*

To this rejoinder the plaintiff demurred, and the defendants joined in demurrer.

At December term,1847, the District Court gave the following judgment :—

Thereupon the demurrer is sustained by the court, with leave to the said defendants to answer over, but said defendants elect to abide by their aforesaid amended rejoinder; and it being adjudged by the court now here, that the information filed in this case, and the matters and things therein charged are true, it is therefore ordered, adjudged, and decreed, that the said defendants, and all others acting by, through, or under them, be ousted, and altogether and forever excluded from all such corporate rights, privileges, and franchises, of the President, Directors, and Company of the Miners' Bank of Dubuque; that the corporation of said President, Directors, and Company be dissolved, and that the plaintiffs have and recover of and from the said defendants their costs about their suit in this behalf expended, and that they have execution therefor.

The Bank appealed to the Supreme Court of Iowa, which affirmed the judgment of the District Court; and a writ of error brought the case up to this court.

It was argued by *Mr. Lawrence*, for the plaintiff in error, who said that the principal question in the case was whether the legislature could repeal the charter of the Bank without evidence of misuse or abuse of its corporate privileges. His argument on this point need not be stated, as the case went off upon a question of jurisdiction.

Mr. Justice DANIEL delivered the opinion of the court.

By a statute approved on the 20th of April, 1836. Congress, within the boundaries designated by that statute, established the territorial government of Wisconsin, (vid. 5 Stat. at Large, 10 to 16); and by a subsequent law, approved June the 12th, 1838, Congress divided the Territory of Wisconsin, and established over what had formed a portion of that territory, the territorial government of Iowa, (vid. 5 Stat. at Large, 235 to 241.) On the 3d of March, 1845, the Territory of Iowa was admitted into the Union, as one of the States of this confederacy, (vid. 5 Stat. at Large, 742,) and on the 3d day of March, 1847, the like admission was extended to the Territory of Wisconsin. Vid. 9 Stat. at Large, 178. By what may be termed the organic laws creating the governments of both the territories above-mentioned, it will be seen, that those governments were vested with general legislative power; and were subjected to no enumerated or specific limitations of that general power, save in certain exceptions applicable to the lands or other property of the United States, and to the right on the part of those governments, in exercising the power of taxation, to discriminate between the property of residents and non-residents. The language of the provisions here referred to is identical in the laws establishing each of these territories, and is in the following words: " That the legislative power of the Territory shall extend to all rightful subjects of legislation, but no law shall be passed interfering with the *primary* disposal of the soil, no tax shall be imposed upon the property of the United States, nor shall the lands or other property of non-residents be taxed higher than the lands of residents." Each of those provisions contains the following declaration : " All laws of the governor and legislative assembly shall be submitted *to, and if disapproved by* the Congress of the United States, the same shall be null and of no effect." Vid. 5 Stat. at Large, p. 13, and ib. p. 237, sec. 6.

By a law of the territorial Legislature of Wisconsin, approved on the 30th of November, 1836, the plaintiffs in error were created a corporation by the style of the Miners' Bank of Dubuque, to continue until the 1st day of May 1851. Vid. acts of Legislature of Wisconsin of 1836, p. 18; No. 7. By an act of Congress, approved on the 3d of March, 1837, (5 Stat. at Large, 198,) the charter granted by the Legislature of Wisconsin was disapproved and annulled in certain particulars; but allowed and left in force as to the provisions not thus vacated, and contained, amongst other provisions, (section 23,) the following: " That this act be and the same is hereby declared to be a public act, and that the same be for the time before limited, construed in all courts and places benignly, and favorably, for every

beneficial purpose therein mentioned. Provided, that if such corporation shall fail to go into operation, or shall abuse or misuse their privileges under this charter, it shall be in the power of the legislative assembly of this Territory at any time to annul, vacate, and make void this charter." After the separation of Iowa from Wisconsin, the Legislature of the former Territory, (the Bank of Dubuque being situated within the government thereof,) by an act of the 21st of May, 1845, repealed the act of incorporation of the Miners' Bank; directed, under the supervision of the court of the District, the settlement by trustees of the affairs of that corporation, and the distribution of its assets amongst the creditors and stockholders thereof. Vid. Laws of Iowa Ter. c. 31. In pursuance of this law, the prosecuting attorney for the Territory, on the 10th of August, 1845, filed an information in the nature of a writ of *quo warranto* against the President, Directors, and Company of the Bank of Dubuque, as usurpers, upon the authority of the United States, of the privileges and franchises of a banking corporation. To this information the plaintiffs pleaded the act of incorporation by the Legislature of Wisconsin, as altered by the act of Congress, and the division of the Territory of Wisconsin, and the creation of the government of Iowa, in justification of their corporate rights. To this plea, it is replied for the United States, that the Act of the Legislature of Wisconsin, by which the defendants were incorporated, had, after the separation of the territories, been repealed by an act of the Legislature of Iowa, within whose jurisdiction the corporation existed. The plaintiffs in error (the defendants below) rejoined, that the repealing act of the Legislature of Iowa had been passed without the said corporation having failed to go into operation, and without having misused or abused its privileges. On behalf of the United States there was a demurrer to this rejoinder, and in the mean time the Territory of Iowa having become a State, this case was tried before the Supreme Court for the Second Judicial District of the State, by which tribunal the demurrer was sustained, and judgment of ouster pronounced against the Bank.

By the plaintiffs in error it is insisted, that the averments in their rejoinder being admitted by the demurrer, it follows *ex consequenti*, that the repealing law of the Territory of Iowa was unconstitutional, as a law arbitrarily abrogating the charter of the Bank, and therefore a law *impairing the obligation of a contract*. In reviewing this case thus made, this court do not consider themselves called upon to test either the power of the government of Iowa for the enactment of the statute complained of, the coincidence or incompatibility of that statute with the 10th section of the first article of the Constitution, or

1 *

regularity of the proceedings in the court below. At the threshold of their examination of this case, they are met by an inquiry far more important and controlling than either of these, viz., an inquiry into their own authority to effect, under any aspect under which this case is presented to them, the result which is sought at their hands? Whatever authority there exists in this court to reëxamine and reverse the judgments or decrees of the courts, not those regularly appertaining to the organized judicial system of the United States, such authority must be traced to the 25th section of the law establishing the "Judicial Courts of the United States," by which section alone the power of this court for the purposes above stated was created and is clearly defined. By recurrence to that section it will be perceived, in order to give the corrective power to this tribunal, that, by the decision of the *State court*, there must have been "drawn in question, the validity of a statute or an authority exercised under the United States, and the decision be against their validity;" or it must be "where is drawn in question the validity or statute of, or an authority exercised *under any State*, on the ground of their being repugnant to the Constitution, treaties, or laws of the United States, and the decision is in favor of such their validity; or where is drawn in question the construction of any clause of the Constitution, or of a treaty or statute of, or commission held under the United States, and the decision is against the title, right, privilege, or exemption, specially set up or claimed under such clause of the Constitution, treaty, statute, or commission." By a comparison of the record before us with the section of the Judiciary Act above quoted, we think it nowhere apparent, that there has been, by the decision of the Court of Iowa, drawn in question the validity of a treaty or statute of, or an authority exercised under the United State much less that there has been a decision against the validity of either; or that there has been drawn in question the validity of a statute of, or an authority exercised under *any State*, on the ground of its being repugnant to the Constitution, treaties, or laws of the United States, or the construction of any clause of the Constitution, or of any treaty or statute of or commission held under the United States, and a decision adverse to the validity of the latter. And it may be observed, that every requisite to form a ground of jurisdiction enumerated in each of the predicaments comprised in the statute, must combine in order to give to this court the power invoked by the plaintiffs in error. The alleged wrong which the court are called on to redress, is not an act of *State power* at all; it is an act of the *territorial* government of Iowa, by which was repealed an act of the preceding *territorial* govern-

ment of Wisconsin; consequently the decision of the court below asserted no *State* act or power in opposition to the Constitution, treaties, or laws, or to a commission or authority of, or under the United States, and presents therefore no ground of jurisdiction here, either as derived from the language of the statute, or from any construction heretofore given of it. If the question whether a writ of error would lie from this court to review the acts of the territorial governments could ever have been regarded as in any sense equivocal upon the language of the 25th section of the Judiciary Act, such a question could not now be considered as open, under the express adjudications previously ruled by this court. Thus in the case of Scott *v.* Jones, 5 Howard, p. 343, it was expressly declared,—" That an objection to the validity of a statute on the ground that the legislature which passed it were not competent or duly organized, under the acts of Congress and the Constitution, so as to pass valid statutes, is not within the cases enumerated in the 25th section of the Judiciary Act, and therefore this court has no jurisdiction over the subject. That in order to give this court jurisdiction, the statute, the validity of which is drawn in question, must be passed by a *State* a member of the Union, and a public body cwing obedience and conformity to its Constitution and laws. That if public bodies, not duly admitted into the Union, undertake as States, to pass laws which might encroach on the Union or its granted powers, such conduct would have to be reached either by the power of the Union to put down insurrection, or by the ordinary penal laws of the States or Territories within which these bodies are situated and acting : but their measures are not examinable by this court upon a writ of error. They are not *States*, and cannot pass statutes within the meaning of the Judiciary acts." Other cases cited by the court, in the opinion just quoted, might be adduced to show the difference ever taken by the court in reference to its relation to the States as States, and as contradistinguished from the Territories of the United States. It seems to us, that the control of these territorial governments properly appertains to that branch of the government which creates and can change or modify them to meet its views of public policy, viz.: the Congress of the United States. That control certainly has not been vested in this court, either in mode or in substance, by the 25th section of the Judiciary Act.

It has been argued in this case, that as Congress, in creating the territorial governments of Wisconsin and Iowa, reserved to themselves the power of disapproving and thereby annulling the acts of those governments, and had, in the exercise of that power, stricken out several of the provisions of the charter of

the Bank of Dubuque, enacted by the Legislature of Wisconsin, assenting to the residue ; that therefore the charter of this Bank should be regarded as an act of Congress, rather than of the territorial government ; and consequently the decision of the State court, in favor of the repealing law of Iowa, must be held to be one in which was drawn in question and overruled the validity of a statute of or an authority exercised under the United States, and as a decision also against a right, title, or privilege set up under a statute of the United States.    The fallacy of this argument is easily detected.    Congress, in creating the territorial governments, and in conferring upon them powers of general legislation, did not, from obvious principles of policy and necessity, ordain a suspension of all acts proceeding from those powers, until expressly sanctioned by themselves, whilst for considerations equally strong they reserved the power of disapproving or annulling such acts of territorial legislation as might be deemed detrimental.    A different system of procedure would have been fatal to all practical improvement in those territories, however urgently called for ; nay, might have disarmed them of the very power of self-preservation.    An invasion, or insurrection, or any other crisis demanding the most strenuous action, would have had to remain without preventive or remedy, till Congress, if not in session, could be convened, or when in session, must have awaited its possibly procrastinated aid.

The argument would render also the acts of the territorial governments, even the most wholesome and necessary, and though indispensably carried to the extreme of authority, obnoxious to the charge of usurpation or criminality.    The reverse of this argument, whilst it is accordant with the investiture of general legislative power in the territorial governments, places them in the position of usefulness and advantage towards those they were bound to foster, and subjects them at the same time to proper restraints from their superior.    The charter of the Bank of Dubuque enacted in all its details and powers ever possessed by it, (and according to which it was in fact organized,) by the Legislature of Wisconsin, must be looked upon as the creature of that legislature.    To regard it, as we are urged to do by the argument for the plaintiff in error, would constitute it rather a Bank of the United States, situated *without* the United States, and operating within the Territory of Wisconsin, now the State of Iowa, independently of the power or local policy of that State, and beyond the reach of its faculties or obligations to be exerted for its own citizens.  ·  We think that the positions, urged for the plaintiff in error, leave the objections to the jurisdiction as above stated, in their full force.    We regard both the charter granted by Wisconsin, and the repeal of that charter by Iowa,

alike as acts of the territorial authorities, and not as the acts of any State of this Union; and that as such, this court has no power, by writ of error, to take cognizance of them in virtue of, and for the objects designated by, the 25th section of the Judiciary Act.

We therefore adjudge that the writ of error in this case be dismissed for want of jurisdiction.

### Order.

This cause came on to be heard on the transcript of the record from the Supreme Court for the Second Judicial District of the State of Iowa, and was argued by counsel — on consideration whereof, it is now here ordered and adjudged by this court that this cause be and the same is hereby dismissed for the want of jurisdiction.