## No. 1848.

JOHN HENDERSON *v.* MERCHANTS' MUTUAL INSURANCE COMPANY et als.

A contract made prior to the adoption of the constitution of Louisiana, 1868, can not be affected by the provision contained in section 127 of that constitution. If the contract was valid then, it is clear that this provision not only impairs but absolutely destroys its obligation within the meaning of the tenth section of the first article of the constitution of the United States.

Any judgment of a State court resting on such enactment of a State constitution, after the date of the contract, must be reversed in the Supreme Court of the United States.

The reinscription of a mortgage on the granting of an extension of time for the payment of a note, without any consideration for such extension, or change in any other term or condition of the contract, can not be held to be an agreement requiring a stamp.

APPEAL from the Fifth District Court, parish of Orleans. *Leaumont,* J. *P. Charles Cuvellier,* for plaintiff and appellant. *A. & M. Voorhies,* for Merchants' Mutual Insurance Company, defendants and appellants. *E. Howard McCaleb,* for John T. Delmas, appellant.

HOWELL, J. On the first day of July, 1867, the plaintiff, John

Henderson, bought at sheriff's sale, under executory process sued out by Gibert against J. Menard, a lot and improvements in New Orleans, for $5625, and after paying the claim of the seizing creditor, costs, and certain privileges, retained in his hands the sum of $3499 07, to be applied to the payment of the subsequent mortgages set forth in the certificate of the recorder of mortgages, read by the sheriff at the time of the sale. According to said certificate, there was a special mortgage in favor of the Merchants' Mutual Insurance Company, for $10,000, granted by the debtor, Joseph Menard, on the twenty-ninth May, 1857, and reinscribed on the twenty-fifth June, 1867, and several judicial mortgages, resulting from judgments recorded prior to the reinscription of the above special mortgage.

Subsequent to the said purchase, the Merchants' Insurance Company obtained an order of seizure and sale against said property, for $5000 interest and attorneys' fees, and asked that demand of payment and notice of seizure be served on Joseph Menard and John Henderson, alleging the latter to be the holder and possessor of the property, who refuses to pay, and that demand had been made of Menard more than thirty days prior thereto; whereupon Henderson instituted this proceeding by injunction, to restrain the sale of the property, on the following grounds:

*First*—The note on which the said claim is based is prescribed by five years.

*Second*—The mortgage securing said note is prescribed by ten years, and the reinscription after the lapse of more than ten years could not impair the precedence of other mortgages.

*Third*—The property having been sold under an anterior mortgage, could not be again seized and sold for an amount more than the balance of the purchase price in the hands of the purchaser.

*Fourth*—The order of seizure and sale issued upon insufficient evidence, in that there is no authentic evidence of the renewal or extension of the note; there is no stamp on said note; there is no allegation nor legal proof that the mortgage was inscribed in due time, the evidence of which must be stamped; there is no declaration in the affidavit or petition that the debt is due the plaintiff in the hypothecary action, and there is no allegation that ten days' notice had been given to the third possessor. All the parties in interest are called into court to discuss their rights to the said balance of the price and a prayer that all mortgages be canceled.

Issue was joined as to the several parties, but it is necessary to examine the defense set up by only two, J. T. Delmas, a judicial mortgagee, and the Merchants' Insurance Company.

Delmas answers that, having a judgment in the Second District Court of New Orleans, amounting to $5486 73 against Joseph Menard

Henderson v. Merchants' Mutual Insurance Company et als.

and the firm of Menard & Vignaud, he issued à garnishment process and seized in the hands of Henderson the sum of $3499 07, the balance of the price of the property of Menard bought by Henderson and which belonged and accrued to said Menard; that to the interrogatories propounded, Henderson admitted owing said sum, but failing to pay, proceedings have been taken to compel him to do so; that respondent's judicial mortgage takes precedence of the pretended mortgage of the Merchants' Insurance Company, which and the claim are prescribed by ten and five years, and Menard could not waive or renounce to the prejudice of respondent's rights; he specially denies that Menard has any other property out of which his judgment can be satisfied, and avers that by his seizure he has acquired a privilege on the funds in the purchaser's hands; and he prays that the injunction be maintained against the insurance company and that Henderson be ordered to pay his whole claim.

The Merchants' Insurance Company, besides the general issue, denies the validity and finality of the judgment set up by Delmas, for the reason that the consideration of the claim on which it is based was Confederate money; propounds interrogatories to him to prove the fact, and prays that his said judgment be declared null.

There was judgment dismissing the demands of all the parties, at their respective costs; and Henderson and Delmas have appealed.

We will dispose, first, of the demand of Delmas, the judicial mortgagee:

Admitting the correctness of the legal positions assumed by him, he is successfully met by the plea to the validity of his judgment, which is not yet executed. His answers to the interrogatories leave no doubt that the said judgment was based on a contract or agreement, the consideration of which was Confederate money, and is, therefore, null. To render the decree asked for by him, would be to enforce a prohibited agreement. Article 127, Constitution. The District Court did not, therefore, err in dismissing his demand.

As to the questions between the plaintiff and the Merchants' Insurance Company, it need only be remarked, that the latter, holding the special mortgage next in rank to the one under which the property was sold, has the right, under the law and the facts of this case, to the balance of the price and interest retained by the purchaser, who is personally liable for its payment, and ten days' notice is, consequently, not required. C. P. 707, et seq.; 16 La. 163. The injunction should be perpetuated, however, as to the excess.

We deem the objection as to stamps of no weight. The note having been made prior to the date of the Stamp Act, was exempt, and the extensions of payment are not such agreements as require stamps under said act. There is no evidence as to the stamp on the act of

reinscription of the mortgage; and if a stamp is necessary, the presumption is in favor of the officer. The other questions presented in the record merit no consideration.

It is, therefore, ordered that the judgment of the lower court, dismissing plaintiff's demand, be reversed; and it is now ordered that there be judgment in his favor, with costs, perpetuating the injunction herein for the excess of defendant's writ of seizure and sale, over and above the sum of three thousand four hundred and ninety-nine dollars and seven cents ($3499 07), and the interest thereon, at eight per cent. from first July, 1867, for which sum and interest the said order of seizure and sale is hereby maintained.

It is further ordered, that as thus amended, the judgment be affirmed. Costs of appeal to be paid by J. T. Delmas and the Merchants' Mutual Insurance Company.

Rehearing refused.

Writ of error prayed for by *E. Wooldridge, E. Howard McCaleb* and *Campbell & Spofford,* of counsel for John T. Delmas, returnable to the Supreme Court of the United States.

## ON THE APPLICATION FOR WRIT OF ERROR.

LUDELING, C. J. In this case an application for a writ of error to the Supreme Court of the United States has been made on the following grounds:

*First*—Because it is alleged there was drawn in question the application of article 127 of the constitution of the State of Louisiana, and that, by·the judgment of the Supreme Court of Louisiana, the claim ·of petitioner was rejected, in violation of article 1, section 10 of the constitution of the United States.

*Second*—Because there was drawn in question the construction of an act of Congress relative to stamps, and the decree of the court was that the said act of Congress was inapplicable to the case.

We refuse to grant the writ of error on the first ground, because, under the settled jurisprudence of Louisiana, before the adoption of the present constitution of 1868 and since, the judgment of the court would have been the same, whether article 127 of the constitution had validity or not; and the article of the constitution was referred to only as an additional reason for the opinion of the court. Armstrong *v.* Lecomte, 21 An. 528; A. D. Palmer *v.* H. Marston, 22 An.; Wainwright, administrator, *v.* Bridges, 19 An. 234; Dranquet *v.* Rost, 21 An. 538.

"When the record shows that the State court might have disposed of the case, and for ought that appears, did decide it, without deciding .any question under an act of Congress against the plaintiff in error,

·the Supreme Court of the United States has no jurisdiction." Ocean Insurance Company v. Pulley, 13 Peters 157; 15 Peters 18; 7 How. .172; 12 How. 3 (Curtis' ed.); 3 Wal. 246.

On the second ground the applicant is entitled to a writ of error.

It is therefore ordered that a writ of error be granted, returnable to the Supreme Court of the United States, in Washington City, D. C., on the first Monday of December next, 1870, on the plaintiffs in error .giving a bond in the sum of five hundred dollars, conditioned, as the law requires.

---

·SUPREME COURT OF THE UNITED STATES—No. 227—December Term, 1871.

John T. Delmas, plaintiff in error, v. the Merchants' Mutual Insur- .ance Company, John Henderson et al.—In error to the Supreme Court of the State of Louisiana.

Mr. Justice Miller delivered the opinion of the court.

By the Civil Code of Louisiana the purchaser of property sold under a mortgage retains in his own hand the amount which his bid may exceed the sum necessary to satisfy the mortgage and costs of the proceeding under which it was sold. For this surplus he is responsible to the holders of other liens, if there be any, on the same property.

The case before us is a petition in the nature of the equitable bill of jnterpleader, brought by Henderson to have it determined by the court to which of several claimants such a surplus in his hands should rightfully be paid.

The contest finally became narrowed to Delmas on one side and the insurance company on the other, and this contest was decided by the Supreme Court of Louisiana in favor of the latter.

Delmas has prosecuted a writ of error, and relies upon two propo- .sitions ruled against him by that court as bringing the case within the ·revisory power of this court.

*First*—The first of these is that the court below decided that a judgment in his favor against the mortgaged property, which was otherwise conceded to be a valid prior lien, was void because the consideration of the contract on which the judgment was rendered was Confederate money.

*Second*—That the note under which the insurance company claimed had been extended as to time of payment, and the mortgage given to secure it reinscribed, without having the stamps affixed which such agreements required.

*First*—In regard to the first of these propositions, this court has decided, in the case of Thorington v. Smith, 8 Wallace 1, that a contract ·was not void because payable in Confederate money; and notwith-

standing the apparent division of opinion on this question in the case of Hanauer v. Woodruff, 10 Wallace 482, we are of opinion that on the general principle announced in Thorington v. Smith the notes of the Confederacy, actually circulating as money at the time a contract was made, may constitute a valid consideration for such contract.

The proposition involved in this conclusion, however, does not of itself raise one of those federal questions which belong to this court to settle conclusively for all other courts. When a decision on that point, whether holding such contract valid or void, is made upon the general principles by which courts determine whether a consideration is good or bad on principles of public policy, the decision is one we are not authorized to review. Like many other questions of the same character, the federal courts and the State courts, each within their own spheres, deciding on their own judgment, are not amenable to each other.

Accordingly, in several cases coming here on writ of error to the State courts, where the same question of the sufficiency of Confederate money and the sale of slaves as a consideration for a contract was the error complained of, we have dismissed the writ because it appeared that the State court had rested its decision on this ground of public policy, tested by which the contract was void when made. Bethell v. Demeret, 10 Wall. 537; Bank of West Tennessee v. the Citizens' Bank; Worthy v. Marston; Sevier v. Haskell; Jacoway v. Denton, not yet reported.

In the first of these cases the opinion of the Supreme Court of the State was expressly based on the general doctrine and the previous decisions of that court, and not on the constitutional provision. In the case of the Bank of West Tennessee v. the Citizens' Bank of Louisiana, that court speaks both of the constitutional provision and the adjudications of that court made prior to the adoption of the article 127 of the Constitution. And as it was apparent from the record that the judgment of the court of original jurisdiction was rendered before that article was adopted, we could not entertain jurisdiction when the decision in that particular point was placed on a ground which existed as a fact and was beyond our control, and was sufficient to support the judgment, because another reason was given which, if it had been the only one, we could review and might reverse.

In the case before us that court say in express language that they hold the judgment of the plaintiff in error void, because the 127th section of the State constitution declares that it shall be so held. That article reads as follows: "All agreements, the consideration of which was Confederate money, notes or bonds, are null and void, and shall not be enforced by the courts of this State."

This provision was made a part of the Constitution of Louisiana

after the contract now in dispute was made, and if the contract was valid then, this provision clearly not only impairs but absolutely destroys its obligation within the meaning of the tenth section of the first article of the Constitution of the United States.

It has long been settled, that under the Act of Congress of 1824, and by reason of the peculiarity of the practice in the courts of that State, the opinions delivered by the appellate court of Louisiana are treated by us as part of the record, and are looked into to learn what they decided when their judgments are brought here by writs of error. Cousin v. Blain's Ex., 19 H. 207; Almonaster v. Kenton, 9 H. 9.

So long as they in those opinions placed the invalidity of this class of contracts on the ground of a public policy existing at the time the contract was made, or so long as they left us to infer that such was the ground, having once before so decided, the decision presented no question over which we had any revisory power. But when, going a step further, they expressly rest the decision of the same question on the constitutional provision we have quoted, and on no other ground, the question necessarily arises, is that provision in conflict with the Constitution of the United States? And the answer to this question depends solely on the validity of the contract when made, for, if valid then, the federal Constitution protects it from all subsequent acts of State legislation, whether in the form of constitutional or ordinary legislative enactments. Hart v. White, 13 Wallace, 650.

It may be said that since we know that the Supreme Court of Louisiana has in other cases held this class of contracts void in their inception, for the very reasons for which the Constitution annuls them, we are bound to follow the State courts in that decision. But, as we have already said, this is not the class of questions in which we are bound to follow the State courts. It is not based on a statute of the State, or on a construction of such a statute, nor on any rule of law affecting title to lands, nor any principle which has become a settled rule of property, but on those principles of public policy designed for the protection of the State or the public, of which we must judge for ourselves, as they do when the question is fairly presented.

Besides, this court has always jealously asserted the right, when the question before it was the impairing of the obligation of a contract by State legislation, to ascertain for itself whether there was a contract to be impaired. If it were not so, the constitutional provision could always be evaded by the State courts, giving such construction to the contract, or such decisions concerning its validity, as to render the power of this court of no avail in upholding it against unconstitutional State legislation. Bridge Proprietors v. Hoboken Co., 1 Wallace, 145; Jefferson Branch Bank v. Skelley, 1 Black, 446.

These views are in precise conformity to what has been held by this

court in the analogous subject of slaves as a consideration of contracts made before the abolition of slavery.   The case of Worthy v. Marston,. decided at this term before the recess, was a writ of error to the Supreme Court of Louisiana, on the ground that that court had held. such a contract void.   And it was urged that it was so held by that court under section 128 of the Louisiana constitution, which declared. contracts for slaves void, in the same terms that section 127 declared contracts for Confederate money void; but this court dismissed the writ of error for want of jurisdiction, because the Supreme Court of Louisiana had said in its opinion that it did not place the decision on the constitutional provision, but on the ground that the same principle had been promulgated and acted on in that court before the constitutional provision was adopted.

Yet, in the case of Hart v. White, 13 Wallace 646, in which the Supreme Court of the State of Georgia held such a contract void by reason of a provision in the constitution of that State, adopted after the contract was made, this court entertained jurisdiction and reversed the judgment.   This was done on the ground taken in the present case,. namely, that the contract being in our judgment valid when made, any constitutional provision which made it void was in violation of the federal Constitution on the subject of impairing the obligation of con-- tracts; and any judgment of a State court resting on such enactment of a State constitution, after the date of the contract, must be reversed in this court on error.

We are of opinion, for these reasons, that there was error in the Supreme Court of Louisiana in deciding that the judgment of Delmas was void by reason of the constitutional provision of that State concerning contracts for which Confederate notes were the consideration.

As the case must be reversed for this reason, we might pass without examination the question raised in regard to the necessity of stamps on the extension of time for the payment of the note, and on the reinscription of the mortgage; but as that may arise again in the further progress of the case, we will dispose of it now.   As regards the latter,. which is the mere act of the party who holds the mortgage, we are at a loss to perceive any ground on which this act of reinscription—the same as recording a deed the second time—can be held to be an agreement requiring a stamp.   The assent of the mortgageor is not necessary, nor was it asked or given.

Nor do we believe it was the purpose of the stamp act to hold a mere extension of the time of payment, indorsed on the note, without any consideration for such extension, or change in any other term or condition of the contract, to be an agreement requiring a stamp.

In the case of Pugh v. McCormick, decided at the present term, it. was held that the indorsement of a note by which the bill passed to the

indorsee, did not require a stamp, and also that the writing on the back of the note by the indorser waiving demand, protest and notice, and agreeing to be liable without them, was good without a stamp. We think this ample authority for holding that a gratuitous extension of time did not require a stamp, as both the writings relied on in that case have more of the elements of an agreement than the one before us. In the matter of the stamp we think the court committed no error.

But, for the error first considered, the judgment is reversed, and the case remanded for further proceedings, in conformity to this opinion. D. W. Middleton, C. S. C. U. S.

UNITED STATES OF AMERICA, SS.—The President of the United States of America, to the Honorable the Judges of the Supreme Court of the State of Louisiana—Greeting:

Whereas, lately, in the Supreme Court of the State of Louisiana, before you, or some of you, in a cause between John Henderson, plaintiff and appellant, and the Merchants' Mutual Insurance Company, John T. Delmas and others, defendants and appellees, and John T. Delmas, appellant, and the Merchants' Mutual Insurance Company, John Henderson et al., appellees, wherein the decree of the said Supreme Court entered in said cause on the fifteenth day of November A. D. 1870, is in the following words, viz:

" It is ordered that the judgment of the lower court dismissing plaintiff's demand be reversed, and it is now ordered that there be judgment in his favor with costs, perpetuating the injunction herein for the excess of defendant's writ of seizure and sale over and above the sum of three thousand four hundred and ninety-nine dollars and seven cents, and the interest thereon at eight per cent. from first July, 1867, for which sum and interest the said order of seizure and sale is hereby maintained. It is further ordered that as thus amended the judgment be affirmed; costs of appeal to be paid by John T. Delmas and the Merchants' Mutual Insurance Company. As by the inspection of the transcript of the record of the said Supreme Court, which was brought into the Supreme Court of the United States, by virtue of a writ of error, sued out by John T. Delmas, agreeably to the act of Congress, in such case made and provided, fully and at large appears.

And whereas, in the present term of December, in the year of our Lord one thousand eight hundred and seventy-one, the said cause came on to be heard before the Supreme Court of the United States on the said transcript of the record, and was argued by counsel, on consideration whereof, it is now here ordered and adjudged by this court,

that the judgment of the said Supreme Court in this cause be and the same is hereby reversed with costs, and that the said John T. Delmas recover against the Merchants' Mutual Insurance Company, John Henderson et al., one hundred and forty-one dollars and forty-seven cents for his costs herein expended and have execution therefor.

And it is further ordered that this cause be, and the same is hereby remanded to the said Supreme Court, for further proceedings to be had therein, in conformity with the opinion of this court.

And the same is hereby remanded to you, the said judges of the said Supreme Court, in order that such execution and further proceedings may be had in the said cause, in conformity to the judgment and decree of this court above stated as, according to right and justice and the constitution and laws of the United States, ought to be had therein, the said writ of error notwithstanding.

Witness the Honorable Salmon P. Chase, Chief Justice of said Supreme Court, the first Monday of December, in the year of our Lord one thousand eight hundred and seventy-one.

———

On motion of E. H. McCaleb, of counsel for John T. Delmas, one of the defendants in the case of John Henderson v. Merchants' Insurance Company et als., and on filing the opinion and mandate of the Supreme Court of the United States, reversing the decision of this court in this case and remanding the same for further proceedings in conformity with said opinion, it was ordered that this case be reinstated and fixed.

After hearing, the court delivered the following opinion :

TALIAFERRO, J.   From the decision rendered by this court in the above entitled case in November, 1869, it was taken by writ of error to the Supreme Court of the United States and the judgment of this court reversed.   In pursuance of the mandate from that court directing further proceedings in this case we now order and decree as follows, viz:   That the surplus of the proceeds of sale of the property of Joseph Menard, viz., the sum of thirty-four hundred and ninety-nine dollars and seven cents remaining in the hands of the plaintiff John Henderson, who purchased said property at sheriff's sale on the first day of July, 1867, be paid over to John T. Delmas, a judgment creditor of Joseph Menard having judicial mortgage to the amount of four thousand five hundred and sixty dollars and fifty cents, with interest, that the injunction be perpetuated; the Merchants' Mutual Insurance Company paying costs of this appeal, and the further sum of one hundred and forty-one dollars and forty-seven cents to J. T. Delmas, costs accrued in the Supreme Court of the United States.