## WHITMORE v. HARDIN ET AL.

NO JUDICIAL TRIBUNAL IN THIS COUNTRY CAN TAKE JURISDICTION OF DIVORCE CASES without the authority of a statute. Such proceedings are *sui generis*, and intrinsically are neither actions at law nor suits in chancery.

THE ACT OF THE TERRITORIAL LEGISLATURE approved March 6, 1852, entitled "An act in relation to bills of divorce," is valid, in so far at least as it grants to the probate courts jurisdiction in cases of divorce for statutory causes.

AFTER A DECREE OF DIVORCE AND DIVISION OF PROPERTY THE COURT MAY MODIFY its order in relation to the distribution of the property, but neither the right of one party to procure such modification against another, nor the statute giving the right, creates a lien upon the property of the latter, without the proper proceedings in court; therefore where the interest of a divorced wife in the property of her husband, set apart to her by the original decree, has ceased by the happening of the contingency upon which that interest depended, such property may be charged by the husband as any other property not affected by the decree, and any subsequent order of the court creating a new interest therein in favor of the wife will attach, only subject to any lien which the husband may have created thereon.

APPEAL by the plaintiff from a judgment of the third district court in favor of the defendant Emma Hardin. Prior to 1862 Emma Hardin and John W. Jenkins were man and wife; in that year they were divorced by a decree of the probate court of Salt Lake county, and by this decree the divorced wife was awarded possession of parts of the house situate on the premises which are the subject of this action, as long as she should remain unmarried. In 1873 Emma Hardin remarried, having in the mean time abandoned the possession decreed her. On May 18, 1875, John W. Jenkins and another wife, Eliza, mortgaged the same premises to the

plaintiff, which mortgage was duly recorded on the next day. The plaintiff seeks to foreclose this mortgage making John W. Jenkins and his wife Eliza and Emma Hardin parties. In October, 1875, Emma Hardin applied to the probate court of Salt Lake county for further relief against her divorced husband Jenkins, by modified decree, and by an appeal to the district court succeeded, in November, 1877, in obtaining a personal judgment against Jenkins for fifteen hundred dollars in lieu of her former allowance as alimony, which was decreed to be a lien upon the mortgaged premises; under this judgment the mortgaged premises were sold to the defendant Emma Hardin, who in due time received a marshal's deed therefor. *Kenyon* v. *Kenyon*, referred to in the opinion, is reported in this volume, *post*.

*E. D. Hoge*, for the appellant.

The appeal is from the judgment, and only the judgment roll is before this court.

We claim that the conclusions of law are radically wrong, and that upon the facts found we are entitled to a decree of foreclosure.

The decree of the probate court of August 30, 1862, is a nullity, and John W. Jenkins and Emma Hardin are yet husband and wife: *Cast* v. *Cast*, 1 Utah, 112; *Ferris* v. *Higley*, 20 Wall. 382.

It will no doubt be claimed, as it was in the court below, that congress, by what is known as the Poland bill, made valid that void decree.

I answer—1. That congress could not by legislation make valid what was void: Cooley's Const. Lim., secs. 107, 108, 397, 398; *McDaniel* v. *Carrell*, 19 Ill. 226; *Richards* v. *Rate*, 68 Pa. St. 248; *Denny* v. *Mattoon*, 2 Allen, 361; Sedgwick's Stat. & Const. Law, 141; *California Dist. Ct. Reis* v. *Lawrence, S. B. McKee, Judge.* 2. Congress has not attempted to validate this decree of the probate court: Utah Stat., sec. 3, p. 54.

But it is claimed, and if I am not mistaken the court below held, that the Spanish or Mexican law is in force in this territory, and by that law the defendant Emma Harden was entitled to this property.

We deny that the Mexican law is in force, and allege that the common law is in force in this territory; this question has been settled by our own supreme court: *People* v. *Green*, 1 Utah, 11 ; *First National Bank* v. *Kinner*, Id. 100 ; *Thomas* v. *U. P. R. R. Co.*, Id. 232. This last case affirmed in the supreme court of the United States.

The common law being in force, the respondent had no interest in this property. The court will take judicial notice that this property was not at the date of this divorce, in August, 1862, property to which dower would attach, it not being a fee simple or fee tail: *Davenport* v. *Farrer*, 2 Ill. 314 ; *Grover* v. *Dawley*, 5 Cal. 486 ; *Bowers* v. *Keescker*, 14 Iowa, 301 ; Bouv. Law Dict. 505, 711 ; 2 Bla. Com. 131.

But if the defendant was entitled to dower, the provision made by probate decree would deprive her of that right.

*Sutherland & McBride*, for the respondent.

The appellant's argument for the reversal is founded entirely on the proposition that Jenkins and the respondent are husband and wife.

As the respondent has never set up any claim to the premises on the basis of dower, that part of the appellant's brief may be entirely dismissed. But it is by no means clear or probable that the appellant could enforce her mortgage on community property, under the circumstances stated in the record, even if the respondent were still the wife of the mortgagor; for though he might in that case have the power to manage and even to sell, he can not give it away nor devise it, nor could he mortgage it except to pay an actual debt against the community: *Beard* v. *Knox*, 5 Cal. 256 ; *Smith* v. *Smith*, 12 Id. 226 ; *De Godey* v. *Godey*, 39 Id. 164. And on the dissolution of the marriage relation by divorce, the husband's right, as head of the community, to manage or dispose of the common property ceased, and the parties from that time are on an equal footing: *De Godey* v. *Godey*, *supra*.

Answering the appellant's brief, we contend the decree of the probate court of August 30, 1862, is not a nullity, and the mortgagor and this respondent are not, and at the time the mortgage was given were not, husband and wife.

This court will take notice that an act was passed in 1852,

by the territorial legislature, purporting to give the probate courts jurisdiction in all cases of divorce and alimony: Comp. Laws, 373; that until this jurisdiction was questioned in 1873 and 1874, it had been frequently exercised; all the divorces granted in this territory for a period of over twenty years had been granted by that court, for the divorce law applied in terms exclusively to it; and during that period the jurisdiction of the probate courts was recognized and affirmed by this court: *Kenyon* v. *Kenyon, post.*

Nor has that jurisdiction ever been judicially determined not to exist. *Cast* v. *Cast,* 1 Utah, 112, merely decided that the district courts had jurisdiction. Boreman, J., went further, and contended that the probate courts had not jurisdiction. That question was not in the case. Judge McKean concurred in the result, that is, that the district courts had jurisdiction, and Judge Emerson dissented.

This jurisdiction is not excluded by the organic act, as the lines are traced in *Ferris* v. *Higley,* 20 Wall. 375, decided in 1874.

The probate courts had been exercising for years general chancery and common-law jurisdiction, and in that act of congress is this general provision: "All judgments and decrees heretofore rendered by the probate courts which have been executed, and the time to appeal from which had by the existing laws of said territory expired, are hereby validated and confirmed:" Comp. Laws, 54.

It is contended by appellant that this provision is void; that congress had no power to enact it; but it is not stated what limitation of the power of congress was exceeded in this legislation. All retrospective statutes which have been declared void will be found to be in conflict with some constitutional restriction. This is proved by appellant's citations, except the unauthoritative case of *Reis* v. *Lawrence.* There are no such restrictions on the power of congress to legislate for territories. Acts of congress are here the paramount law: *American Ins. Co.* v. *Carter,* 1 Pet. 511, 538, 542, 545; *Scott* v. *Sanford,* 19 Hun, 442.

But the validation of decrees for divorce may be sustained to a greater extent than other curative statutes. Legislatures have an inherent power to grant divorces: Cooley's Const.

Lim. 107; *Starr* v. *Pease,* 8 Conn. 541; Opinion of Judges, 16 Me. 479; *Adams* v. *Palmers,* 51 Id. 480; *Levins* v. *Sleator,* 2 G. Greene, 604; *Brigham* v. *Mills,* 17 Ohio, 144.

The probate court in the first instance, and the district court on appeal, had power to distribute and afterwards to modify the order for the distribution of the property of the parties, and to provide for the respondent's maintenance; and the respondent had an interest in and title to a distributive share, depending for amount on this action of the court, in the nature of property, originating in the marriage relation, and having priority from the date of cause, in the husband's misconduct, for a divorce. This right, in the nature of property, exists only in estate acquired by the parties during the time they lived together as husband and wife. The husband, owing his wife a support, might be compelled to perform that duty out of subsequent earnings or accumulations.

The property in question here is of the former class, that in which the respondent has an interest being property existing at the time of the divorce, and then and afterwards within the power of the court as "property of the parties:" Comp. Laws, sec. 1155.

Such property, being subject to division among them, is common property; they are tenants in common in respect to it, and the court determines their proportions in distributing it.

The section 1155 of the act of 1852, by its very terms, has the effect in case of a divorce, first, of making the parties—husband and wife—tenants in common of the property; and second, of giving the divorce court a continuing jurisdiction to distribute it.

The order of the district court, made November 23, 1877, gave the respondent for her interest in the premises one thousand five hundred dollars, to be made out of it, unless otherwise paid. That sum has the qualities of purchase money, and is supported by the same equities that make such money a lien; and until paid the property would continue subject to the same jurisdiction of the court.

It was bought under that order; on expiration of redemption was deeded to respondent by the marshal and Jenkins, and by those proceedings the court has awarded it wholly to the respondent. She has the property by virtue of the exe-

cuted order of the court, and the acquiescence of all parties who could appeal or redeem, by a title as indisputable as if the divorce court, in the exercise of the jurisdiction granted by the statute, had directly distributed it to her.

The plaintiff's mortgage covered only such defeasible interest in the premises as Jenkins owned at the time it was made.

His act of giving a mortgage is entirely nugatory so far as this respondent is concerned, and so far as that act conflicts with the exercise of the jurisdiction of the court in the divorce case. Jenkins could no more vest in a third person a paramount right to the property than to the custody of children, if there had been any.

The plaintiff was subject to the rule of *caveat emptor*. Property can be acquired by purchase only by buying it of the owner. The buyer must beware; he buys at his peril; and if he deals with any but the owner he gets nothing—at most, he gets what the buyer can sell.

Equity makes an exception to the rule that the buyer can acquire no more than the seller possesses, in favor of a *bona fide* purchaser who negotiates with one apparently clothed with the legal title, having no notice that it is subject to an equity, and pays value. Whoever claims in this character must bring himself within the exception. This doctrine can have no application here.

1. There is no evidence that Jenkins was apparently owner of any legal title: *Valtier* v. *Hinde*, 7 Pet. 271; *Jackson* v. *Rowe*, 2 Sim. & St. 472; *Chew* v. *Barnett*, 11 Serg. & R. 389; *Shiras* v. *Craig*, 7 Cranch, 34; *Bassett* v. *Nosworthy*, 2 Lead. Cas. in Eq., note.

Nor did the plaintiff take such a deed, there being no covenants in it, as entitles her to claim as a *bona fide* purchaser: *Oliver* v. *Piatt*, 3 How. 333; *May* v. *Le Claire*, 11 Wall. 232; *Mona* v. *West*, 62 Mo. 496.

And, moreover, the respondent's title was not different from Jenkins'; if it can be presumed that his title was legal, hers was also, and therefore the plaintiff can not invoke this doctrine. If both titles were equitable or both legal, that doctrine has no application.

2. The plaintiff took her mortgage while the property, which was finally disposed of by the order of the court, was

within its jurisdiction; in other words, the plaintiff took her mortgage *pendente lite*, and therefore subject to the result of the litigation: *Le Neve* v. *Le Neve*, 172 et seq.; 2 Lead. Cas. in Eq., note; *Murray* v. *Boulter*, 1 Johns. Ch. 566; *Muray* v. *Fenster*, 2 Id. 15; *Debell* v. *Foxworthy*, 9 B. Mon. 228; *Watson* v. *Wilson*, 2 Dana, 406.

EMERSON, J.:

The appeal is from the judgment, and only the judgment roll is before this court.

It is claimed on the part of the appellant that the conclusions of law are radically wrong, and that upon the facts found she was entitled to a decree of foreclosure.

The first point made of the appellant is that the decree of the probate court of August 30, 1862, is a nullity, and John W. Jenkins and Emma Hardin are yet husband and wife.

This decree was made by the probate court, in the exercise of a jurisdiction given to it by an act of the territorial legislature passed in 1852, to grant divorces for statutory causes. For more than twenty years the courts named had exercised this jurisdiction. It was many years before their authority to do so was even questioned. In the case of *Kenyon* v. *Kenyon*, decided in this court in 1861, and not reported, this jurisdiction was recognized and affirmed. In *Cast* v. *Cast*, 1 Utah, 112, the real question before the court related to the jurisdiction of the district courts in divorce proceedings for statutory causes. A majority of this court as then constituted decided that the district courts had jurisdiction, and that the probate courts did not, and that so much of the territorial act referred to as attempted to confer jurisdiction upon the probate courts was void.

An act of congress, entitled "An act in relation to courts and judicial officers in the territory of Utah," approved June 23, 1874, in express terms confers this jurisdiction upon the probate courts concurrently with the district courts, so that the question is now no longer important; only so far as it affects marital and property rights arising out of the action of the probate courts in such cases, prior to its passage. Because this jurisdiction had been so long and so universally exercised, and so many marital and such vast property rights

have grown up under it, and also for the reason that the decision of this court in *Cast* v. *Cast* seems to be in conflict with that in *Kenyon* v. *Kenyon*, we have determined to give this subject more consideration than we otherwise should.

We are all of the opinion that the act of the territorial legislature referred to, in so far at least as it granted to the probate courts jurisdiction in cases of divorce for statutory causes, was valid, and that this jurisdiction was rightfully exercised by those courts.

The proposition contended for in *Cast* v. *Cast*, that the idea of a probate court necessarily excludes authority in matters of divorce, sounds strangely enough when it is borne in mind that our institutions come to us from a country where jurisdiction in matrimonial causes has always been exercised by the same judges to whom the law has confided authority in probate matters. It is true the ecclesiastical courts, which until recently have been the probate courts in England, were not empowered to grant divorces from the bonds of matrimony, but neither were any other courts; and so far as divorce was matter of judicial cognizance at all, it was left exclusively to the ecclesiastical tribunals: Bishop's Mar. & Div., c. 3. Indeed, Blackstone, speaking of the jurisdiction of these courts, which in many other particulars had been frequently questioned, adds that "matrimonial causes, or injuries respecting the rights of marriage, are another and much more undisturbed branch of the ecclesiastical jurisdiction;" and that causes matrimonial are now so peculiarly ecclesiastical that the temporal courts will never interfere in controversies of this kind, unless in some particular cases, as when a marriage is called in question after the death of the parties, and when it would tend to bastardize and disinherit the issue: 3 Bla. Com. 92, 93.

And so thoroughly was the propriety of a union of probate and divorce jurisdiction fixed in the English mind, that when recently it was deemed best to confer authority to grant divorces from the bonds of matrimony upon the courts, the probate court was the court selected to exercise that jurisdiction: 3 Cooley's Bla. Com. 95, note. And though the lord chancellor and the judges of the superior courts of common

law with the judge of probate compose this court, yet the latter is the judge ordinary, and may sit alone.

The English practice is, therefore, nearer in harmony with the territorial statute than with the opposite view.

There is no such thing as uniformity in the American states as to the jurisdiction that may be joined with that of the probate of wills, or on the other hand, as to the courts that shall take cognizance of applications for divorce. In some states the constitution or the laws have been careful to confine the probate courts to matters concerning the administration of estates; but in others the probate jurisdiction is united with that of common-law and chancery causes. In perhaps one half of the states of the Union, the courts having probate powers have also a somewhat multifarious jurisdiction, embracing in some cases criminal jurisdiction. It would be idle to undertake to deduce any general rule from the constitutions and laws of the several states, as to the classification of the probate and divorce jurisdiction, or as to the delegation of either to any particular description of courts; but this may be said in general, that divorce is sometimes a proceeding in the common-law courts, sometimes in the equity courts, and may sometimes be had in the courts exercising probate powers; so that the question of the delegation of divorce jurisdiction, when not determined by the state constitution, seems to have been always regarded as one addressed to the legislative discretion, and to be determined not according to any fixed rules, but according to the legislative view of what was most expedient. The organic law did not specifically provide for cases of divorce, and it became necessary, therefore, for the territorial legislature to prescribe the jurisdiction when it prescribed the causes.

A case of divorce is not intrinsically a law case, for it was unknown to the common law; it is not intrinsically a chancery case, for it was unknown to equity jurisprudence.

The New York cases of *Wightman* v. *Wightman*, 4 Johns. Ch. 343, and *Perry* v. *Perry*, 2 Paige, 505, relied upon in *Cast* v. *Cast*, are not authority further than this : that a court of equity, when a supposed marriage is not such in fact, but is void from its inception, may declare it so, as they may declare any other contract void. The true doctrine undoubtedly

is that stated by Mr. Bishop, that no judicial tribunal in this country can take jurisdiction of divorce cases without the authority of a statute: Bishop's Mar & Div., 4th ed., sec. 71. It is a proceeding *sui generis,* and its being so regarded accounts for the diversity in American legislation.

It is not denied that the territorial legislature possesses a general authority to legislate on domestic concerns. Indeed, that right has been most fully recognized by the supreme court of the United States in the case of other territories as well as this, and the question is no longer open to argument: *Miners' Bank* v. *Iowa,* 12 How. 1; *Vincennes University* v. *Indiana,* 14 Id. 268; *Clinton* v. *Englebrecht,* 13 Wall. 434.

In this country it has been customary to confer the authority to grant divorces upon the courts, but in the colonial period it was exercised by the legislature, and the overwhelming weight of American authority is, that the right of divorce pertains to the legislature when not expressly delegated to the courts: Bishop's Mar. & Div., c. 34, and cases cited; Cooley's Const. Lim. 110; *Levins* v. *Sleator,* 2 G. Greene, 604.

This is so well understood, and has been so often judicially declared, that whenever it has been deemed necessary to establish a different rule, express constitutional provisions have been adopted for that purpose; and these either name a court to exercise the authority, or they prohibit the legislature from exercising it, so that it becomes a necessity that some law should be passed conferring jurisdiction upon the courts. In other words, the settled American doctrine is, that the granting of a divorce is not of necessity a judicial act, so that it may still be done by the legislature, though all judicial power has already been conferred upon another department: *Shaw* v. *Prose,* 8 Cow. 541; *Crane* v. *Meginnis,* 1 Gill & J. 463; *Gaines* v. *Gaines,* 9 B. Mon. 295; *Dixon* v. *Dixon,* 1 Yerg. 110; *Wright* v. *Wright,* 2 Md. 429; Bishop's Mar. & Div., sec. 686.

It was within the legislative power of the territorial legislature not only to declare what should be grounds for a divorce, but to name the probate courts as the proper courts in which proceeding should be taken to procure one. The

right of these courts to exercise this jurisdiction is not denied by either the language or reasoning of *Ferris* v. *Higley*, 20 Wall. 375.

The terms of the act of congress of June 23, 1874, above referred to, confirm the view here taken.

In that act, congress, after declaring that the district courts should have exclusive original jurisdiction in *all* suits or proceedings in chancery, and in *all* actions at law in which the sum or value of the thing in controversy shall be three hundred dollars or upward, adds, "and they shall have jurisdiction in suits for divorce." Thus plainly indicating that the jurisdiction in divorce proceedings, thus granted in terms, was not included in either the chancery or common-law jurisdiction before given. In the same section, in fixing the jurisdiction of the probate courts, and limiting them to the usual probate proceedings, it declares that they shall have no civil, chancery, or criminal jurisdiction whatever, and then, without an exception or proviso, immediately adds, "they shall have jurisdiction of suits of divorce for statutory causes concurrently with the district courts."

The decree of the probate court of August 30, 1862, is not a nullity, and the defendants John W. Jenkins and Emma Hardin are not, and at the time the mortgage was given were not, husband and wife.

Section 6 of the territorial statute, under which this divorce proceeding was had, provides, among other things, that "when a divorce is decreed, the court shall make such order in relation to the children and property of the parties, and the maintenance of the wife and such portion of the children as shall be awarded to her, as may be just and equitable. * * * *Provided further*, that when it shall appear to the court at a future time that it would be for the interest of the parties concerned that a change should be effected in regard to the former disposal of children or distribution of property, the court shall have power to make such change as will be conducive to the best interests of all parties concerned." Section 3 of "An act in relation to guardians," also in force at that time, provides : "When a divorce is decreed or obtained, such order in relation to the children and property of the parties, and the maintenance of the

wife, may be made as shall be deemed right and proper; subsequent changes may be made by the probate court or selectmen in those respects when circumstances render them expedient."

By the second finding of fact, it appears that the court in the divorce proceedings, in conformity with the provisions of the statute above quoted, awarded the use of a portion of the property, included in the mortgage which it is now sought to foreclose, to the respondent, until the happening of a certain contingency, namely, her marriage. This contingency it is found did happen on the first day of December, 1873, and which, without further proceedings, terminated her right to and interest in the property. No change in the distribution made on the granting of the divorce was sought until long after the giving of the mortgage to the appellant, then a judgment was obtained against John W. Jenkins for a definite amount, and unless paid in a certain time, this property was ordered sold to satisfy that judgment. This could not and ought not to have the effect of postponing the lien created by the mortgage to the appellant in favor of this judgment.

It is true, the court is authorized to modify any order for the distribution of property; but this does not necessarily apply to the identical property held at the time of granting the divorce, but generally to any property held by the party against whom the modification is sought, or rather to his ability to answer any such modification. Otherwise a decree of divorce and any distribution of property thereon would operate as a perpetual injunction against the absolute disposition of the remainder. Whatever real estate a party might own at the time a decree was obtained against him, modifying a former order in divorce, could be subjected to any such decree, the same as in the case of any other decree or judgment. The right of one party to procure the modification of such an order against another does not create a lien upon the property of the latter, without the proper proceedings in court. The statute giving the right to have the order modified does not of itself create a lien.

The lien arising out of the appellant's mortgage is anterior to any arising out of the proceedings supplementary to the divorce, and should be first satisfied.

If any right of dower existed prior to the act of 1872, which declared that it should not exist, the respondent's right was barred by the absolute divorce from her husband.

This is the result of a divorce *a vinculo* by the common law. That the common law, so far as it is suited to our condition and is consistent with the constitution and laws of the United States, is in full force here, "and that it is to be resorted to as furnishing to that extent the measure of personal rights and the rule of judicial decision," has been repeatedly decided by this court.

Upon the facts as found by the court below, the appellant is entitled to a decree of foreclosure against all the defendants.

The judgment of the third district court is reversed, and the cause is remanded, and the third district court is hereby directed to enter a decree of foreclosure in favor of the appellant and against all the defendants for the amount that shall then be found to be due on said note and mortgage.

HUNTER, C. J., and TWISS, J., concurred.