APPLEBY ET AL. *v.* DELANEY, COMMISSIONER.

ERROR TO THE SUPREME COURT OF THE STATE OF NEW YORK.

No. 16.   Argued October 7, 1925;   reargued March 1, 2, 1926.—Decided June 1, 1926.

1. Acting under general authority contained in a New York statute of 1871, the Dock Commissioner of New York, with the approval of the Sinking Fund Trustees of the city, adopted a plan of harbor improvement inconsistent with the right of the plaintiffs, under contracts made with the city before the date of the statute, to fill in their water lots out to a bulkhead line; and their application to the Commissioner for permission to do such filling was therefore denied by him. *Held,* that the refusal was equivalent of a law of the State impairing the obligation of the contracts, within the meaning of Article I, § 10, of the Constitution; and that this court had jurisdiction, under Jud. Code, § 237, to review by writ of error a judgment of the state court sustaining the refusal over the constitutional objection. P. 409.

2. Where the grantees of water lots, conveyed to them by the City of New York, in fee simple, " to be made and gained out of the

Hudson River," together with wharfage rights, covenanted to build wharves, bulkheads, and certain avenues and streets within the outboundaries of the premises conveyed, upon request of the city, but not to build them without its permission, and the ordinance under which the deeds were made provided that " No grant made by virtue of this ordinance shall authorize the grantee to construct bulkheads or piers or make land in conformity therewith, without permission to do so is first had and obtained from the common council." *Held:*

(1) That the requirement of the city's consent before filling should be construed as relating to the streets, and not to the lots between them, since, otherwise, the enjoyment of the lots,—for which the grantees gave valuable considerations and on which for many years they had paid the city taxes in reliance on this construction, as supported by utterances of the state courts and declared to have become a rule of property,—would be dependent upon the mere pleasure of the city. P. 409.

(2) That, if the provision applied at all to the lots, it should be regarded as a mere police regulation, requiring a permit for the purpose of supervising the filling, in protection of the public order. P. 413.

235 N. Y. 364; 199 App. Div. 552; reversed.

This is a writ of error to a judgment of the Supreme Court of New York in a suit for mandamus entered by direction of the Court of Appeals of New York, in a case involving the same deeds of water lots between 39th and 41st Streets, on the east side of North or Hudson River, which have been under consideration in the case just decided. The petition of the Applebys as relators in this case shows, that they have performed all the covenants they had to perform under the deeds; that neither they nor their predecessors in title had ever been required to build or erect piers, wharves or bulkheads, referred to in the deeds; that, under the Act of 1871, a Department of Docks was created, with general supervision and control of the dock property of the city; that it was given authority, with the approval of the Sinking Fund trustees of the city, to make a plan or plans for the improvement of the harbor, to lay out wharves, and to condemn such vested

property interests of individuals as might interfere with such plans and make compensation therefor; that in June, 1891, the city instituted a condemnation proceeding to acquire the Appleby property, but that, in 1914, it discontinued it and since that has never attempted to acquire title to the premises; that a plan was adopted, in 1916, by the Dock Commission for harbor improvement, with the approval of the Sinking Fund trustees, for a marginal wharf to be 250 feet wide, to include all of 12th Avenue, and so much of the Appleby property as lay west of 12th Avenue, and within a distance of 100 feet westerly therefrom, which would interfere with relators filling their lots; that in December, 1919, the Applebys made application to the Commissioner of Docks to begin and continue the filling of the two lots of the Applebys within the government bulkhead line as permitted by their deeds; that the Commissioner of Docks, in answer to this application, wrote as follows:

"January 31st, 1920.

" Replying to your letter of the 26th instant, I beg to advise you that the application of Edgar S. Appleby and John S. Appleby for permission to construct either a platform between West 39th and West 41st Streets, North River, or a concrete wall on platform construction with sheet piling along the inner side to retain filling is hereby formally denied on account of the fact that the proposed construction is not in accordance with the new plan."

Thereupon this suit was brought by the Applebys against the Dock Commissioner to compel the issuing of the necessary permit. This was denied by the Supreme Court in special term. The denial was reversed in the Supreme Court, Appellate Division, and that reversal was in turn reversed by the Court of Appeals in an opinion as follows:

" Relators seek to compel the commissioner of docks to approve permits for the filling in of lands under water.

" The facts herein are substantially the same as in *Appleby* v. *City of New York,* decided herewith, with this difference: The city established a new bulkhead line in 1916, which crosses the premises granted between Twelfth and Thirteenth avenues. It was held in the action that the rights of the relators are not limited by this bulkhead line but only by the bulkhead line established by the secretary of war. The court below decided herein that a writ of peremptory mandamus should issue unless condemnation proceedings were instituted to acquire relators' property and property rights within such line. (199 App. Div. 552.)

" We held in the action that the title of relators to lands actually under water is subject to the rights of the city to improve the same for the purposes of navigation but that the city must re-acquire the property right in the land under water which it has conveyed before it can carry out its plans for such improvement.

" This application should not, however, be granted. Section 15 of title 4 of the sinking fund ordinance of 1844, referred to in the opinion in the action, provides:

" ' No grant made by virtue of this ordinance shall authorize the grantee to construct bulkheads or piers or make land in conformity therewith, without permission to do so is first had and obtained from the common council.'

" The water grants under which relators hold title also provide:

" 'And it is hereby further covenanted and agreed, by and between the parties to these presents, and the true intent and meaning hereof is that the said party of the second part, his heirs and assigns will not build the said wharves, bulkheads, avenues or streets hereinbefore mentioned or any part thereof, or make the lands in conformity with the covenants hereinafter mentioned until permission for that purpose shall be first had and obtained

from the said parties of the first part, or their successors, and will not build or erect or cause to be built or erected any wharf or pier or other obstruction in the Hudson River in front of the hereby granted premises without the permission of the said parties of the first part or their successors or assigns first had for that purpose.'

" In *Duryea* v. *Mayor, etc.* (62 N. Y. 592) it was said that a similar clause did not limit the right of the owners to fill the space between the streets, but on a subsequent appeal (*Duryea* v. *Mayor, etc.,* 96 N. Y. 477), it was said that the provisions of the sinking fund ordinance had not been called to the court's attention on the first appeal and it was held that the council had given its consent. We are free to interpret the clause according to its meaning. To construe the ordinance and the grants as permitting the filling of the land between the streets at the will of the grantee and as prohibiting the building of the wharves and streets without the consent of the common council would be unreasonable. The lands are thus held subject to the conditions of the grant and may not be filled in without the approval of the city authorities. The power to grant permission to construct bulkheads or piers and to make land in conformity with relators' grants implies the right to withhold such permission."

The Sinking Fund ordinance, referred to in the opinion of the Court of Appeals, does not appear in the record. The Court of Appeals, however, took judicial notice of it, and the following statement with respect to it is taken from the opinion of that court in the case of *Duryea* v. *The Mayor,* 96 N. Y. 477, 485, 486:

" These ordinances adopted in 1844 provide, among other things, that the lands under water on the shores of the island of New York, belonging to that city under its several charters, might be sold and conveyed by such city to parties desiring to purchase the same, giving priority to the owner of the adjacent upland upon certain terms and conditions therein mentioned."

"Section 15 reads:

"'No grant made by virtue of this ordinance shall authorize the grantee to construct bulkheads or piers or make land in conformity thereto without permission so to do is first had and obtained from the common council, and the grantee shall be bound to make such lands, piers and bulkheads at such times and in such manner as the common council shall direct under penalty of forfeiture of such grant for noncompliance with such terms of the common council.'

"These ordinances were recognized and approved by the state legislature in ch. 225 of the Laws of 1845, and were attempted thereby to be placed beyond the power of the local authorities of the city to limit or amend without the previous consent of the Legislature."

*Mr. Charles E. Hughes*, with whom *Mr. Banton Moore* was on the briefs, for plaintiffs in error.

*Mr. Charles J. Nehrbas*, with whom *Mr. George P. Nicholson* was on the briefs, for defendant in error.

It seems plain that the decision of the Court of Appeals was not based on any act of legislation of the State of New York passed subsequently to the grants in question. The decision was purely one of the construction, meaning, and intention of the grants. *Ross* v. *Oregon*, 227 U. S. 150; *Moore-Mansfield Co.* v. *Electrical Install. Co.*, 234 U. S. 619; *Cleveland & Pittsburgh R. Co.* v. *Cleveland*, 235 U. S. 50; *Tidal Oil Co.* v. *Flanagan*, 263 U. S. 444; *Fleming* v. *Fleming*, 264 U. S. 29. It is not true, as claimed by the plaintiffs, that the New York courts have given effect to the limitation attempted to be provided by the new bulkhead line of 1916. On the contrary, the Court of Appeals has expressly held that the rights of the plaintiffs are not limited by that line. The sole ground of the decision is that the grants from the city to the plaintiffs' predecessors in title, construed in the light of

the ordinance pursuant to which they were made, required the permission of the common council of the City of New York before any filling could be done. *Duryea v. Mayor,* 96 N. Y. 477; 62 N. Y. 592.

MR. CHIEF JUSTICE TAFT, after stating the case as above, delivered the opinion of the Court.

The relators base their writ upon the alleged impairment of their contract rights contained in the grant and covenants of their deeds by the plan, adopted in 1916, under the Act of 1871, by the Dock Department, and approved by the Sinking Fund trustees, the execution of which the Dock Commissioner is enforcing by a formal refusal to grant permission, as requested by the relators, to fill up their lots. The authority of the Dock Commissioner and the Sinking Fund trustees, under the Act of 1871, is such as to make the plan and the refusal equivalent to a statute of the State, and, assuming that it is in conflict with the grant and covenants of relators' deeds, it is a law of the State impairing a contract obligation under § 10, Article I, of the Federal Constitution. *New Orleans Waterworks Co.* v. *Louisiana Sugar Refining Co.,* 125 U. S. 18; *Williams* v. *Bruffy,* 96 U. S. 176, 183; *Walla Walla City* v. *Walla Walla Water Works Company,* 172 U. S. 1; *Mercantile Trust & Deposit Company* v. *Columbus,* 203 U. S. 311; *Zucht v. King,* 260 U. S. 174. We have jurisdiction of the writ of error under § 237 of the Judicial Code.

The question in this case then is whether the deeds before us, construed in connection with the Sinking Fund ordinance of 1844, gave to the plaintiffs the right to fill in the lots without the consent of the city. Each deed described the land conveyed as follows: "All that certain water lot or vacant ground and soil under water *to be made land and gained out* of the Hudson or North River or harbor of New York, and bounded," etc., " together with all

and singular the privileges, advantages, hereditaments and appurtenances to the same belonging or in any wise appertaining." The grants were in fee simple. The grantees respectively covenanted that they would, upon the request of the city, build bulkheads, wharves, streets and avenues to form part of 12th and 13th Avenues, and 39th, 40th and 41st Streets, which were within the general description of the premises conveyed. These were excepted therefrom for public streets. The grantees agreed to pay the taxes on the lots lying between the streets. There was a covenant that they would not build the wharves, bulkheads, avenues or streets previously mentioned until permission had been given by the city. The city covenanted that the grantees might have wharfage on the westerly side of the granted premises fronting on the Hudson River, excepting at the westerly ends of the cross streets, which was reserved for the city.

In a deed of a similar water lot on the east side of the city, with exactly the same covenants, the question arose in the case of *Duryea* v. *The Mayor, etc.*, 62 N. Y. 592, 596, whether the covenants with respect to filling the streets applied to the filling of the water lots between the streets, and it was held that they did not. The court said, at page 596:

" The only covenant in the deed for making lands applies exclusively to the building of streets, wharves, etc., and there is not a word pertaining to the intermediate spaces."

In the same case reported in 96 N. Y. 477, the Sinking Fund ordinance, not referred to in the first decision, was pressed upon the court to change its conclusion in the first hearing and to hold that the city had the absolute right, by reason of the ordinance, to forbid the filling of the land conveyed. As to that, the court said:

" It may well be doubted whether the construction formerly given by this Court to the covenants contained in

the deed should not also be deemed applicable to the provision of the sinking fund ordinance. The object of this provision was not to cause any interest in the land conveyed to be retained by the grantor, or to postpone the period of enjoyment of its owners, or increase the security of the public creditors, but was obviously designed to enable the grantor to shield itself from the burden of caring for and maintaining the piers, wharvès and streets until such time as it should deem the assumption thereof profitable and expedient, and to fix the time and manner of erecting those structures with reference to the introduction therein of water, gas, sewer pipes and other necessary conveniences which naturally fell under the supervision and control of the city authorities. The accomplishment of this object would in no way be materially interfered with by allowing the grantees to proceed with their contemplated work of redeeming their lands from the water and realizing the benefits, which were the sole inducement to them, for its purchase."

It referred to the conduct of the city through all its departments for a period of upwards of twenty years in dealing with the ordinance and deeds like this as having affixed the interpretation claimed by the relators as the true intent and meaning of both. It said further:

" The rule by which this ordinance is to be construed is such as applies to the interpretation of the acts of other legislative bodies, and is that which shall best effectuate the intent of its authors. The reason and object of an act are to be regarded to arrive at its meaning, and while it is not competent to interpret that which has no need of interpretation, or to deny to clear and precise terms the sense which they naturally present, yet when such terms lead to manifest injustice and involve an absurdity, law and equity both require us to give such an effect to the language used as will accomplish the obvious intent of the legislature.

" The only lands expressly provided to be made by the ordinance are those constituting the piers, wharves, streets and avenues, and since it is unnecessary in order to give the clause in question an office to perform, to extend it to lands outside of such streets, and to create a right unconnected with those clearly intended to be granted, it is in accordance with settled rules of interpretation to limit the effect of general language to the accomplishment of the object undoubtedly intended. If it be held that the words ' make land in conformity thereto,' as used in the ordinance, apply only to the lands necessary to form the piers, bulkheads and streets, the defendant will not only be protected in all of the rights intended to be secured to it, but the grantee will receive the benefits of his purchase and the deed will be free from objection on account of the apparent repugnancy existing between the interests actually conveyed and those apparently reserved.

" It is quite inconceivable that parties should purchase land burdened with the condition that it should be enjoyed only by the permission of the grantor, and a construction having that effect, should only be adopted when no other is possible or sustainable."

After giving this construction to the deed and ordinance, the court then examined the evidence and found that the common council had by its conduct consented to the filling in of the lots; and, because in its summing up the court referred to the latter ground, it is insisted that its chief discussion and conclusion upon the construction of the ordinance and deed are not to be treated as authority. It should be noted that the construction of the deed by the court in the *Duryea Case* upon this point was referred to approvingly as authority in *Mayor v. Law,* 125 N. Y. 380, 381, where, citing the *Duryea Case,* the court used this language with respect to a similar covenant:

" The grantee became the absolute owner of the land between the streets—the land granted, and [that] he

could fill it up whenever he chose, suiting his own pleasure as to the time and manner of doing it, but there was nothing in the grant binding him to fill it up."

The court of Appeals in the present case disposed of the question we are discussing as follows:

" To construe the ordinance and the grants as permitting the filling of the land between the streets at the will of the grantee, and prohibiting the building of the wharves and streets, without the consent of the common council would be unreasonable."

We can not agree with this. We think the reasons advanced by that Court in the second *Duryea Case* to sustain the opposite construction of the deed and ordinance are much more persuasive. It has added force when it appears from the opinion in the *Duryea Case,* and the conclusion of the Appellate Division in this case, that such construction of such deeds and the ordinance has become a rule of property for more than fifty years. It is not reasonable to suppose that the grantees would pay $12,000, in 1852 and 1853, and leave to the city authorities the absolute right completely to nullify the chief consideration for seeking this property in making dry land, or that the parties then took that view of the transaction. In addition to the down payment, the grantees or their successors have paid the taxes assessed by the city for seventy-five years, which have evidently amounted to much more than $70,000. It does not seem fair to us, after these taxes have been paid for sixty years, in the confidence, justified by the decision of the highest state court, that there was the full right to fill in at the pleasure of the grantees and without the consent of the city, now to hold that all this expenditure may go for naught at the pleasure of the city.

If the Sinking Fund ordinance is to be applied at all to the filling in of the land in the limits within the deeds, it should in our judgment be regarded as a mere police

requirement of a permit incident to the filling and to supervising its execution by regulation as to time and method, so that it should not disturb the public order. Had the refusal of the Commissioner of Docks, charged with the police regulation as to the docks, taken this form, an application for mandamus might well have been denied, because only an effort to control the police discretion of the public authorities, but the refusal to permit the filling to begin is not put on any such ground. It is denied because the city has a different plan, which does not permit the filling at all. This is an assertion of the right of the city absolutely to prevent the filling which is an impairment of the obligation of the contract made by the city with these plaintiffs, in violation of the Constitution of the United States.

The judgment of the Supreme Court is reversed and the case remanded for further proceedings not inconsistent with this opinion.

*Reversed.*