## KING MANUFACTURING COMPANY *v.* CITY COUNCIL OF AUGUSTA ET AL.

No. 392. Argued March 12, 1928.—Decided May 14, 1928.

*Mr. Bryan Cumming* for plaintiff in error.

*Mr. E. H. Callaway,* with whom *Mr. Archibald Black-shear,* City Attorney, was on the brief, for defendants in error.

MR. JUSTICE VAN DEVANTER delivered the opinion of the Court.

This is a suit brought in a state court in Georgia to restrain the enforcement of an ordinance of the City of Augusta fixing rates for water power supplied from a canal owned and maintained by the city. The plaintiff is a manufacturing company which operates a mill adjacent to the canal with water power supplied therefrom. The objection urged against the ordinance is that it is repugnant to the contract clause of the Constitution of the United States, and therefore invalid, in that it impairs the obligation of a prior contract whereby the city undertook to supply water power for the plaintiff's mill in perpetuity at a lower rate than that fixed in the ordinance. The court of first instance held the ordinance valid and accordingly dismissed the suit. This was affirmed by the Supreme Court of the State, 164 Ga. 306; and the case is

here on writ of error allowed by the Chief Justice of that court.

Counsel on both sides treat the case as one which rightly may be brought to this Court on writ of error, but some members of the Court doubt that it is such a case. Therefore this question will be given immediate consideration.

The jurisdiction of this Court to review on writ of error judgments or decrees of state courts of last resort is defined by § 237(a) of the Judicial Code, as set forth in the amendatory act of February 13, 1925, c. 229, 43 Stat. 936. As there defined this jurisdiction extends to two classes of cases—

(1) "where is drawn in question the validity of a treaty or statute of the United States, and the decision is against its validity;"

(2) "where is drawn in question the validity of a statute of any State on the ground of its being repugnant to the Constitution, treaties or laws of the United States, and the decision is in favor of its validity."

Plainly the present case is not within the first provision. Is it within the second? This depends on the sense in which the words "a statute of any State" are used therein. If they are used as narrowly comprehending only an enactment of the state legislature, the case is excluded; but if they are used as broadly comprehending any legislation proceeding from the law-making agencies of the State, the case is included.

In usage "statute" is a term which has both a restricted and a broad signification. This is reflected in the following excerpt from Bouvier's Law Dictionary, Rawle's Revision:

"STATUTE. A law established by the act of the legislative power. An act of the legislature. The written will of the legislature, solemnly expressed according to the forms necessary to constitute it the law of the state.

" This word is used to designate the written law in contradistinction to the unwritten law.

"Among the civilians, the term statute is generally applied to laws and regulations of every sort; every provision of law which ordains, permits or prohibits anything is designated a statute, without considering from what source it arises."

The Constitution of the United States does not use the term " statute," but it does employ the term " law," often regarded as an equivalent, to describe an exertion of legislative power. Thus it is declared that a bill presented in either house of Congress, if receiving prescribed favorable consideration, shall " become a law," Art. I, § 7; that Congress may " make all laws " necessary and proper for carrying into execution various enumerated powers, Art. I, § 8, cl. 18; that no State " shall pass " any *"ex post facto* law or law impairing the obligation of contracts," Art. I, § 10, cl. 1; that no State " shall make or enforce any law " abridging the privileges or immunities of citizens of the United States, Fourteenth Amendment, § 1; that the Constitution, " laws " and treaties of the United States shall be the supreme law of the land and the judges in every State shall be bound thereby, anything in the Constitution or " laws " of any State to the contrary notwithstanding, Art. 6, cl. 2, and that the judicial power of the United States shall extend, among others, to all cases in law and equity arising under the Constitution, " laws " and treaties of the United States, Art. 3, § 2.

It of course rests with each State to determine in what form and by what agencies its legislative power may be exerted. It may legislate little or much in its constitution, may permit the electorate to make laws by direct vote, may entrust its legislature with wide law-making functions and may delegate legislative authority to subordinate agencies, such as municipal councils and state com-

missions. But whether this power be exerted in one form or another, or by one agency or another, the enactments put forth, whether called constitutional provisions, laws, ordinances or orders, are in essence legislative acts of the State; they express its will and have no force otherwise. As respects their validity under the Constitution of the United States all are on the same plane. If they contravene the restraints which that instrument places on the legislative power of a State they are invalid, no matter what their form or by what agency put forth; for, as this Court has said, the protection which these restraints afford applies, " whatever the form in which the legislative power is exerted; that is, whether it be by a constitution, an act of the legislature, or an act of any subordinate instrumentality of the State exercising delegated legislative authority, like an ordinance of a municipality or an order of a commission." *Standard Scale Company* v. *Farrell,* 249 U. S. 571, 577.

The jurisdictional provision we are considering is designed to be in aid of such protection. It proceeds on the theory that through inadvertence or design those who are entrusted with the legislative power of a State may exercise the same in a manner forbidden by the Constitution of the United States, and that the state courts may uphold such legislation when it should be held invalid. Unlike other state action, legislation consists of rules having continuing force and intended to be observed and applied in the future; and this regardless of the state agency from which it proceeds.

Were the question an open one, these considerations would afford impelling reasons for holding that the jurisdictional provision uses the words " a statute of any State " in their larger sense and is not intended to make a distinction between acts of a state legislature and other exertions of the State's law-making power, but rather to include every act legislative in character to which the

State gives its sanction. But the question is not an open one; it heretofore has been resolved in keeping with the view just indicated.

The jurisdictional provision originally was part of § 25 of the act of September 24, 1789, c. 20, 1 Stat. 73, 85, which authorized this Court to review on writ of error judgments and decrees of state courts of last resort in cases—

(1) " where is drawn in question the validity of a treaty or statute of, or an authority exercised under, the United States, and the decision is against their validity; "

(2) " where is drawn in question the validity of a statute of, or an authority exercised under, any State, on the ground of their being repugnant to the Constitution, treaties or laws of the United States, and the decision is in favor of such their validity; "

(3) " where is drawn in question the construction of any clause of the Constitution, or of a treaty, or statute of, or commission held under, the United States, and the decision is against the title, right, privilege or commission specially set up or claimed by either party under, such clause of said Constitution, treaty, statute or commission."

By the act of February 5, 1867, c. 28, 14 Stat. 385, that section was reënacted—the first and second provisions without change and the third to read as follows:

(3) " where any title, right, privilege or immunity is claimed under the Constitution, or any treaty or statute of, or commission held, or authority exercised under, the United States, and the decision is against the title, right, privilege, or immunity specially set up or claimed by either party under such Constitution, treaty, statute, commission, or authority."

The three provisions—the third as so amended—were carried into § 709 of the Revised Statutes of 1873 and into § 237 of the Judicial Code of 1911. By the act of September 6, 1916, c. 448, 39 Stat. 726, the third provision was

eliminated so far as a review on writ of error is concerned; and by the act of February 13, 1925, *supra,* the first and second provisions were amended by omitting from both the words " or an authority exercised under " and with that change were reënacted in § 237(a).

. In order that the second provision—the material one in this case—and the change made therein may be accurately in mind we now quote the provision in both its original and its amended form—

. [Act 1789] " where is drawn in question the validity of a statute of, or an authority exercised under, any State on the ground of their being repugnant to the Constitution, treaties, or laws of the United States, and the States, and the decision is in favor of its validity."

[Act 1925] " Where is drawn in question the validity of a statute of any State on the ground of its being repugnant to the Constitution, treaties or laws of the United States, and the decision is in favor of its validity."

It will be seen that the phrase " a statute of any State " has been in the provision from the time of its original enactment, and that this phrase was retained in the reënactment of 1925 without change or qualification. So, its meaning before the reënactment is its meaning now.

Before coming to decided cases which we deem relevant it is well to refer to some which, although cited as in point, appear to us not to be so. *Weston* v. *Charleston,* 2 Pet. 449 and *Home Insurance Company* v. *Augusta,* 93 U. S. 116, are examples. The first is a case where a tax ordinance of Charleston was sustained by the state court over the objection that it was in conflict with the Constitution of the United States. This Court's jurisdiction was invoked, and was by it sustained, p. 463, on the ground that the city's action in adopting the ordinance was the " exercise of an authority " under the State. Whether the ordinance was a statute of the State was not considered. The other case also involved a municip

ordinance which the state court had upheld against the contention that it was in conflict with the contract clause of the Constitution. This Court took jurisdiction, p. 121, on the grounds (a) that the validity of an authority exercised under the State was in question and (b) that a right claimed under the Constitution was denied. There was no negation of other grounds.

*Williams* v. *Bruffy,* 96 U. S. 176, is the first case in which the phrase " a statute of any State " in the jurisdictional provision was considered and construed. There a debt arising on contract and owing by a citizen of Virginia to citizens of Pennsylvania had been sequestrated during the Civil War under an enactment of the Confederate States and collected from the debtor by that Government. After the war the creditors brought a suit against the debtor's administrator in a state court in Virginia to collect the debt. The defendant interposed pleas setting up the sequestration and collection under the confederate enactment. Judgment went for the defendant on these pleas over the plaintiffs' objection that the confederate enactment was invalid under the Constitution; and the Supreme Court of Appeals sustained that ruling. The case was brought to this Court on writ of error, its jurisdiction being invoked on the grounds that the case was one (a) where the validity of both a statute of the State and an authority under the State was drawn in question as repugnant to the Constitution and was sustained, and (b) where a right, privilege and immunity claimed under the Constitution was denied. The jurisdiction was contested, but was sustained expressly on " both " grounds in a considered opinion by Mr. Justice Field, speaking for entire Court. In sustaining the first ground he said pp. 182–183:

" The pleas aver that a confederation was formed by Virginia and other States, called the Confederate States of America, and that under a law of this confederation,

enforced in Virginia, the debt due to the plaintiffs was sequestrated. Now, the Constitution of the United States prohibits any treaty, alliance, or confederation by one State with another. *The organization whose enactment is pleaded cannot, therefore, be regarded in this Court as having any legal existence. It follows that whatever efficacy the enactment possessed in Virginia must be attributed to the sanction given to it by that State.* Any enactment from whatever source originating, to which a State gives the force of law is a statute of the State, within the meaning of the clause cited relating to the jurisdiction of this Court. It would be a narrow construction to limit the term to such enactments as have gone through various stages of consideration by the legislature. There may be many acts authorized by the constitution of a State, or by the convention that framed it, which have not been submitted to the consideration of its legislature, yet have all the efficacy of laws. By the only authority which can be recognized as having any legal existence, that is, the State of Virginia, this act of the unauthorized confederation was enforced as a law of the Commonwealth. Its validity was drawn in question on the ground that it was repugnant to the Constitution of the United States; and the decision of the court below was in favor of its validity."

*Ford* v. *Surget,* 97 U. S. 594, is much like the case just cited. The plaintiff sued in a state court in Mississippi to recover for cotton belonging to him which the defendant had destroyed in that State during the Civil War in obedience to an enactment of the Confederate States. By special pleas the defendant set up that enactment in justification of the trespass; and the plaintiff insisted by demurrers that the enactment was contrary to the Constitution. The demurrers were overruled and judgment was given for the defendant, which the Supreme Court affirmed. The case was brought to this Court by

writ of error. The jurisdiction, although contested, was sustained in an opinion of Mr. Justice Harlan. He quoted with approval the above extract from *Williams* v. *Bruffy,* and added, p. 603:

" The general orders of the state court overruling the demurrers must be accepted, in every essential sense, as an adjudication in favor of the validity of an act of the confederate congress, recognized and enforced as law in Mississippi, and which act, according to the rule laid down in that case, must be, therefore, regarded by us as a statute of that State, within the meaning of the provisions of the act declaring the appellate jurisdiction of this court. It results that we have power to review the final judgment of the Supreme Court of Mississippi."

*Stevens* v. *Griffith,* 111 U. S. 48, is a case where the Supreme Court of Tennessee had given effect to an enactment of the Confederate States. This Court there said, after reciting its ruling in *Williams* v. *Bruffy,* p. 51:

" So, in this case the Confederate enactment, under which the confiscation of the money was had, can be treated only as a statute of Tennessee, by whose sanction it was enforced as a law of that State."

*New Orleans Waterworks Co.* v. *Louisiana Sugar Refining Co.,* 125 U. S. 18, is a case wherein this Court was asked on writ of error to review a judgment of the Supreme Court of Louisiana giving effect to an ordinance of New Orleans against the contention that it impaired the obligation of a contract. The opinion was by Mr. Justice Gray. After stating that, to be within the contract clause of the Constitution, the impairment must be " by a law of the State," and that this Court " has no jurisdiction to review a judgment of the highest court of a State, on the ground that the obligation of a contract has been impaired, unless some legislative act of the State has been upheld by the judgment sought to be reviewed," and after quoting with approval the statement

in *Williams* v. *Bruffy*—"Any enactment, from whatever source originating, to which a State gives the force of law, is a statute of the State, within the meaning of the clause cited relating to the jurisdiction of this Court," he said, p. 31:

" So a by-law or ordinance of a municipal corporation may be such an exercise of legislative power delegated by the legislature to the corporation as a political sub-division of the State, having all the force of law within the limits of the municipality, that it may properly be considered as a law, within the meaning of this article of the Constitution of the United States."

In *North American Storage Co.* v. *Chicago*, 211 U. S. 306, which came to this Court from a Circuit Court of the United States, the question was presented whether a municipal ordinance was state action within the clause in the Fourteenth Amendment prohibiting " any State " from denying due process or equal protection. The Court said, p. 313:

" In this case the ordinance in question is to be regarded as in effect a statute of the State, adopted under a power granted by the state legislature, and hence it is an act of the State within the Fourteenth Amendment."

The construction which was put on the phrase " a statute of any State " in the jurisdictional provision by the decisions in *Williams* v. *Bruffy*, *Ford* v. *Surget* and *Stevens* v. *Griffith* did not stop with those cases, but has been approvingly followed and applied in later cases.

In *Atlantic Coast Line R. R. Co.* v. *Goldsboro*, 232 U. S. 548, this Court was asked to review on writ of error a judgment of the Supreme Court of North Carolina giving effect to a municipal ordinance over the objection that it was invalid under the Constitution of the United States. Mr. Justice Pitney, speaking for the entire court, sustained its jurisdiction and on that point said, p. 555:

"A municipal by-law or ordinance, enacted by virtue of power for that purpose delegated by the legislature of the State, is a state law within the meaning of the Federal Constitution. [Citing cases.]

"And any enactment, from whatever source originating, to which a State gives the force of law, is a statute of the State, within the meaning of the pertinent clause of § 709, Rev. Stat.; Judicial Code, § 237; which confers jurisdiction on this court. *Williams* v. *Bruffy,* 96 U. S. 176, 183."

*Reinman* v. *Little Rock,* 237 U. S. 171, came here from the Supreme Court of Arkansas on writ of error. The sole question involved was the validity of a municipal ordinance which the state court had sustained against the objection that it was in conflict with the Constitution of the United States. Mr. Justice Pitney again speaking for the entire court said, p. 176:

" The decision of the state court of last resort is conclusive upon the point that the ordinance under consideration is within the scope of the powers conferred by the state legislature upon the city council of Little Rock. It must therefore be treated, for the purposes of our jurisdiction, as an act of legislation proceeding from the law-making power of the State; for a municipal ordinance passed under authority delegated by the legislature is a state law within the meaning of the Federal Constitution; and any enactment, from whatever source originating, to which a State gives the force of law, is a statute of the State within the meaning of Judicial Code, § 237, which confers jurisdiction upon this court. *Atlantic Coast Line* v. *Goldsboro,* 232 U. S. 548, 555, and cases cited."

*Zucht* v. *King,* 260 U. S. 174, was brought here on writ of error solely on the ground that the state court had upheld a municipal ordinance against the contention that

it was invalid under the Constitution of the United States. This Court dealt with the initial question of jurisdiction as follows, p. 176:

" The validity of the ordinances under the Federal Constitution was drawn in question by objections properly taken below. A city ordinance is a law of the State within the meaning of § 237 of the Judicial Code as amended, which provides a review by writ of error where the validity of a law is sustained by the highest court of the State in which a decision in the suit could be had. *Atlantic Coast Line R. R. Co.* v. *Goldsboro*, 232 U. S. 548, 555."

Further applying the ruling in *Williams* v. *Bruffy* this Court repeatedly has held that an order of a state commission made in the exercise of delegated legislative authority is a statute of the State in the sense of the jurisdictional provision. Excerpts from some of the cases—all brought here from state courts on writs of error—will suffice to show the course of decision.

" Such an order, being legislative in its nature and made by an instrumentality of the State, is a state law within the meaning of the Constitution of United States and the laws of Congress regulating our jurisdiction." *Lake Erie & Western R. R. Co.* v. *Public Utilities Commission*, 249 U. S. 422, 424.

" The validity of the order prescribing the rates was directly challenged on constitutional grounds, and it was held valid by the highest court of the State. The prescribing of rates is a legislative act. The commission is an instrumentality of the State, exercising delegated powers. Its order is of the same force as would be a like enactment by the legislature. If, as alleged, the prescribed rates are confiscatory, the order is void. Plaintiff in error is entitled to bring the case here on writ of error and to have that question decided by this Court. The motion to dismiss will be denied." *Bluefield Waterworks & Improvement Co.* v. *Public Service Commission*, 262

U. S. 679, 683, specifically followed and applied in *North-ern Pacific Ry. Co.* v. *Department of Public Works,* 268 U. S. 39, 42.

" The cause is here upon writ of error. Considering the circumstances disclosed by the record we have no jurisdiction unless it affirmatively appears that in the court below there was duly drawn in question the validity of a statute or an authority exercised under the State because of repugnance to the Constitution, treaties or laws of the United States. Jud. Code, § 237, as amended Sept. 6, 1916. Under repeated rulings here, for jurisdictional purposes the order of the Commission must be treated as though an Act of the Legislature." *Live Oak Water Users Ass'n* v. *R. R. Commission,* 269 U. S. 354, 356.

" The authority of the Dock Commissioner and the Sink-ing Fund trustees, under the Act of 1871 [they exercised delegated legislative power], is such as to make the plan and the refusal equivalent to a statute of the State, and, assuming that it is in conflict with the grant and cove-nants of relators' deeds, it is a law of the State impairing a contract obligation under § 10, Article I, of the Federal Constitution. [Citing *New Orleans Waterworks Co.* v. *Louisiana Sugar Refining Co.,* 125 U. S. 18; *Williams* v. *Bruffy,* 96 U. S. 176, 183; and other cases.] We have jurisdiction of the writ of error under § 237 of the Judicial Code." *Appelby* v. *Delaney,* 271 U. S. 403, 409.

A like view of an order, legislative in nature, of a state commission has been taken in other related cases. *Grand Trunk Western Ry. Co.* v. *Railroad Commission,* 221 U. S. 400, 403; *Louisville and Nashville R. R. Co.* v. *Garrett,* 231 U. S., 298, 318; *Arkadelphia Milling Co.* v. *St. Louis Southwestern Ry. Co.,* 249 U. S. 134, 141; *Oklahoma Natural Gas Co.* v. *Russell,* 261 U. S. 290, 292.

In no case has the phrase " a statute of any State " in the jurisdictional provision been construed otherwise than as shown in the foregoing review. With its use else-

where—especially in connections indicative of its use in a different sense—we are not now concerned.

It is said that the act of February 13, 1925, which amended the jurisdictional provision was enacted with the purpose of contracting the obligatory jurisdiction of this Court. We recognize that there was such a purpose and that effect should be given to it. But the act dealt with several jurisdictional provisions, including those relating to cases coming to this Court from the Circuit Courts of Appeals, the District Courts, the Court of Appeals of the District of Columbia and the Court of Claims. It shows that the purpose was to cut down and change our jurisdiction in particular respects and to leave it as before in others. We are concerned here with a particular jurisdiction, as to which there was no cutting down or change. The terms whereby it was defined in the original provision were retained, and thus it was left as before.

We accordingly hold that the ordinance in question is a statute of the State within the meaning of the jurisdictional provision, and therefore that this case is rightly here on writ of error.* So we turn to the merits.

The adoption and terms of the ordinance are not in dispute. Nor is it questioned that the city became obligated long before the ordinance to supply water power from its canal for the plaintiff's mill. But it is questioned that there was any engagement for a designated price or rate in perpetuity. Both courts below found for the city on this point. That finding is entitled to respect, but is not conclusive; for it rests with this Court in cases like this, where contract obligations are said to have been impaired by subsequent legislation contrary to the constitutional restriction, to determine whether there was a contract and what obligations arose from it. *St. Paul Gas Light Com-*

---

* Followed in *Sprout* v. *South Bend* and *Nectow* v. *Cambridge*, decided this day, *post*, pp. 163, 183.

*pany* v. *St. Paul*, 181 U. S. 142, 147; *Appleby* v. *New York*, 271 U. S. 364, 379–380.   It is admitted that there was here no formal contract.   But it is insisted that a contract arose from conversations and correspondence between representatives of the plaintiff and officers of the city, and that it included an engagement for a designated price or rate in perpetuity.   The proofs have been considered.   It would serve no purpose to review them in this opinion We think they fall short of showing any engagement respecting the rate, other than that it was to be the established rate for users in general.   The rate had been fixed by ordinance when the plaintiff obtained the right to have water power supplied to its mill, but there was, as we construe the proofs, no engagement that that rate should continue indefinitely.   The city may be under a duty to supply the power at a reasonable rate [See *Millers* v. *Augusta,* 63 Ga. 772], but that question is not in this case.   The plaintiff's objection is confined to the asserted impairment of a prior contract.

*Judgment affirmed.*

MR. JUSTICE BRANDEIS (with whom MR. JUSTICE HOLMES concurs), dissenting.

I think that the writ of error should be dismissed.   The judgment below was entered after the effective date of the Act of February 13, 1925, c. 229, 43 Stat. 936, 937, 942. That Act struck from § 237 of the Judicial Code the words " or an authority exercised under any State." [1]   The section as so amended limits the right of review by writ of error to cases where the highest court of a State has denied the validity of a treaty or statute of the United States, or has affirmed the validity of a statute of a State, challenged as repugnant to the Constitution, treaties, or laws of the

---

[1] The Act of 1925 also struck out the words " or an authority exercised under the United States."

United States. Other cases can be reviewed only if this Court, in the exercise of its discretion, grants a writ of certiorari. Here the challenge was to the validity of an ordinance of a city. I cannot believe that if Congress had intended to maintain our jurisdiction to review judgments sustaining such ordinances on writ of error, it would not have found clearer language in which to express its purpose.

The question before us is the interpretation, not of the word "laws," used in the Constitution, but the narrower term "statute," employed in the Judiciary Act of 1789, c. 20, § 25, 1 Stat. 73, 85. And our task is to construe, not the single word "statute," but the phrase "statute of any State." Laws or regulations adopted by a municipality are called, in common speech, either ordinances or by-laws, not "statutes." [2] In some connections, rules established by an institution are referred to as statutes. Thus, the rules adopted by a university or its founder are sometimes spoken of as statutes of the university. But no one would call them statutes of the State under whose law the university is incorporated. Nor would any one, in refer-

---

[2] These are the terms employed in the charters of American cities and towns both before and since the adoption of the Constitution. They have been continuously employed apparently by all text-writers on municipal corporations and government. "Local laws of a municipal corporation, duly enacted by the proper authorities, prescribing general, uniform and permanent rules of conduct, relating to the corporate affairs of the municipality, are, in this country, generally designated as ordinances. 'By-laws' or 'bye-laws', was the original designation." McQuillin, Municipal Ordinances, § 1; 2 McQuillin, Municipal Corporations, § 632. "The result of legislative action by a municipal council or assembly is a local law usually denominated an ordinance." 2 Abbott, Municipal Corporations, § 514. See also Dillon, Municipal Corporations, 1 ed., p. 270; Munro, Municipal Government and Administration, p. 209; Reed, Municipal Government, p. 173. No instance has been found where such writers have used the word "statutes" in referring to municipal ordinances,

ring to the laws or regulations adopted by municipal or other corporations, speak of them as "statutes of the State." Has the phrase as originally used in § 25 of the Judiciary Act of September 4, 1789, c. 20, 1 Stat. 73, 85, and as reënacted in § 2 of the Act of February 5, 1867, c. 28, 14 Stat. 385, 386, in § 709 of the Revised Statutes, in § 237 of the Judicial Code, and finally in the Act of 1925, acquired a different, conventional, meaning so that it must be held to include municipal ordinances?

Our jurisdiction to review a judgment of a state court sustaining the validity of a municipal ordinance alleged to be repugnant to the Federal Constitution, was first invoked in *Weston* v. *City Council of Charleston*, 2 Pet. 449, 463–464. Section 25 of the Judiciary Act of 1789, which was then in force without amendment, authorized a review by writ of error in any case "where is drawn in question the validity of a statute of, or an authority exercised under any State, on the ground of their being repugnant to the constitution, treaties or laws of the United States, and the decision is in favor of such their validity, or where is drawn in question the construction of any clause of the constitution, or of a treaty, or statute of, or commission held under the United States, and the decision is against the title, right, privilege or exemption specially set up or claimed by either party, under such clause of the said Constitution, treaty, statute or commission." The jurisdiction having been questioned, because of the nature of the proceeding, Mr. Chief Justice Marshall took occasion to specify the clause of § 25 on which he conceived the jurisdiction to rest:

"In this case the city ordinance of Charleston is the exercise of an 'authority under the State of South Carolina,' 'the validity of which has been drawn in question on the ground of its being repugnant to the constitution,' and 'the decision is in favor of its validity'."

The jurisdiction then declared was exercised, without question, in the cases involving municipal ordinances that came before the Court during the next half century.[3]  In 1876 the subject was carefully reconsidered in *Home Insurance Co.* v. *City Council of Augusta,* 93 U. S. 116, 121. After stating the possible bases of jurisdiction under § 709 of the Revised Statutes, the Court said:

" Here there was drawn in question the authority exercised by the city council under the State in passing the ordinance imposing the tax complained of.  The question raised was as to its repugnancy to the Constitution of the United States; and the decision was in favor of the validity of the authority so exercised.  A right was also claimed under the Constitution of the United States.  The decision was adverse to the claim.  The case is, therefore, within two of the categories we have stated.  The jurisdictional objection cannot be maintained."

The Court would hardly have omitted to say that review might also have been had by virtue of the " statute " clause if it had been of opinion that a municipal ordinance could be properly so described.

The second of the categories mentioned in *Home Insurance Co.* v. *City Council of Augusta,* was eliminated, so far as the right to review by writ of error was concerned, by the Act of September 6, 1916, c. 448, § 2, 39 Stat. 726. In cases where the showing was merely that a title, right, privilege or immunity guaranteed by the Constitution had been claimed and denied, that Act provided that there could be no review except by certiorari.  But as it left unchanged the clause regarding the validity of an authority, on which Mr. Chief Justice Marshall had based the power of this Court to review judgments sustaining municipal ordinances, our jurisdiction over such judgments remained unaffected.  When, in 1925, the " authority " clause was

---

[3] *Waring* v. *The Mayor,* 8 Wall. 110; *Woodruff* v. *Parham,* 8 Wall. 123; *Osborne* v. *Mobile,* 16 Wall. 479; *Cannon* v. *New Orleans,* 20 Wall. 577.  Compare *Barron* v. *Baltimore,* 7 Pet. 243, 245–246.

struck from § 237 of the Judicial Code and our jurisdiction on writ of error under that section was limited to cases involving the validity of a statute, Congress cannot have been unaware of the difference, for jurisdictional purposes, between a statute of a State and a municipal ordinance. For attention had been called to the difference by numerous decisions under several jurisdictional acts—the most recent being of wide public interest.

The Act of June 18, 1910, c. 309, 36 Stat. 539, 557, § 17 of which was embodied in the Judicial Code as § 266, declared that "no interlocutory injunction suspending or restraining the enforcement, operation, or execution of any statute of a State by restraining the action of any officer of such State in the enforcement or execution of such statute" should issue except upon a hearing before three judges as there provided. An unbroken line of decisions, beginning in 1911, has held that a municipal ordinance is not a statute within the meaning of that section. *Sperry & Hutchinson Co.* v. *City of Tacoma,* 190 Fed. 682; *Cumberland Telephone & Telegraph Co.* v. *City of Memphis,* 198 Fed. 955; *Birmingham Water Works Co.* v. *City of Birmingham,* 211 Fed. 497, affirmed, 213 Fed. 450; *Calhoun* v. *City of Seattle,* 215 Fed. 226; *City of Des Moines* v. *Des Moines Gas Co.,* 264 Fed. 506; *City of Dallas* v. *Dallas Telephone Co.,* 272 Fed. 410. See also *Land Development Co.* v. *City of New Orleans,* 13 F. (2d) 898, reversed on the merits, 17 F. (2d) 1016. The principal ground of these decisions, namely, "that the natural meaning of 'statute of a state' is a statute or law directly passed by the Legislature of the state, and the natural meaning of 'any officer of such state' is an officer whose authority extends throughout the state, and is not limited to a small district," (198 Fed. 955, 957) is, of course, equally applicable to § 237 of the Judicial Code. It cannot have been unknown to Congress. The construction had already been established when the Act of March 4, 1913, c. 160, 37 Stat. 1013, amended § 266 so as to make

it clearly applicable to suits to enjoin the orders of a state commission.[4] The amending Act inserted after the words " in the enforcement or execution of such statute," the words " or in the enforcement or execution of an order made by an administrative board or commission acting under and pursuant to the statutes of such State." Congress did not include in the amendment any reference to municipal ordinances. The fact that it did not is significant.[5]

---

[4] See the debate in the Senate at the preceding session, 48 Cong. Rec. 8120–8123. The House Committee on the Judiciary was " of the opinion that the statute should be broadened, so as to prevent this kind of interference (i. e., by a single judge) with State officials who are performing their duties under the provisions of a statute enacted by the legislature of a State." House Report, 62d Cong., 3d Sess., No. 1584, p. 2. Mr. Clayton, who was in charge of the bill in the House, said that its purpose was " to put the order of a State railroad commission upon an equality with a statute of a State; in other words, to give the same force and effect to the order of a State railroad commission fixing rates as is accorded under existing law to a State statute." 49 Cong. Rec. 4773.

[5] This Court has not passed expressly on the construction to be given § 266 in this respect. Until amended by the Act of February 13, 1925, § 266 did not require the presence of three judges at the final hearing; and on appeal to this Court from the final decree the propriety of the action of the single judge in granting or denying a temporary injunction was not strictly in issue. *Shaffer* v. *Carter*, 252 U. S. 37, 44. But if this Court had doubted the power of a District Judge to act in such cases, it would hardly have mentioned without comment the fact that such a judge had granted or denied a temporary injunction. This it has done in a number of cases. See *United Railroads* v. *San Francisco*, 249 U. S. 517, 519; *Southern Iowa Electric Co.* v. *Chariton*, 255 U. S. 539, 541; *Galveston Electric Co.* v. *Galveston*, 258 U. S. 388, 390; *Paducah* v. *Paducah Ry. Co.*, 261 U. S. 267, 271; *St. Cloud Public Service Co.* v. *St. Cloud*, 265 U. S. 352, 355. Since the effective date of the Act of 1925, this Court has decided, on certiorari to Circuit Courts of Appeals, a number of cases in which an application for a temporary injunction against the enforcement of a municipal ordinance had been heard before, and the final decree rendered by, a single district judge. See *Hammond* v.

Prior to the Act of 1925, the difference, for purposes of appellate review, between a statute and a law enacted by a subordinate legislative body, had been called to the attention of Congress also by the cases which settled that the enactments of the legislatures and other law-making bodies of the territories and of the District of Columbia are not statutes of the United States within the meaning of legislation governing the jurisdiction of this Court. The question appears to have arisen first under the Act of March 3, 1885, c. 355, § 2, 23 Stat. 443. The phraseology of this statute was similar to that of § 25 of the Judiciary Act .of 1789, and this Court has always recognized that decisions under it and its later reënactments are authoritative with regard to the construction of § 237 of the Judicial Code.[6] It permitted

---

*Schappi Bus Line,* 275 U. S. 164; *Hammond* v. *Farina Bus Line & Transportation Co:,* 275 U. S. 173; *Delaware, Lackawanna & Western R. R. Co.* v. *Morristown,* 276 U. S. 182. If a municipal ordinance had been a statute within § 266, the decrees of the district judges in these cases would have been void for want of jurisdiction.

[6] See *Ireland* v. *Woods,* 246 U. S. 323, 328, citing and following *Champion Lumber Co.* v. *Fisher,* 227 U. S. 445, 451; *Erie R. R. Co.* v. *Hamilton,* 248 U. S. 369, 372, citing and following *Baltimore & Potomac R. R. Co.* v. *Hopkins,* 130 U. S. 210, *District of Columbia* .v. *Gannon,* 130 U. S.·227, and *United States* v. *Lynch,* 137 U. S. 280, 285; *Jett Bros. Distilling Co.* v. *City of Carrollton,* 252 U. S. 1, 6, citing and following *Baltimore & Potomac R. R. Co.* v. *Hopkins,* 130 U. S. 210, and *Champion Lumber Co.* v. *Fisher,* 227 U. S. 445, 450, 451; *Schaff* v. *Famechon Co.,* 258 U. S. 76, 81, citing and following *Baltimore & Potomac R: R. Co.* v. *Hopkins,* 130 U. S. 210; *Zucht* v. *King,* 260 U. S. 174, 177, citing and following *Taylor* v. *Taft,* 203 U. S. 461, and *Champion Lumber Co.* v. *Fisher,* 227 U. S. 445; *Lancaster* v. *McCarty,* 267 U. S. 427, 430, citing and following *Champion Lumber Co.* v. *Fisher,* 227 U. S. 445, 451. The significance of decisions under the Act of 1885 is confirmed by the 'legislative history of the Act, which shows, as seemed probable from its language, that the provision with respect to " a treaty or statute of or an authority exercised under the United States," was derived, like § 237 of the Judicial Code, from § 25 of the Judiciary Act of 1789. See 16 Cong. Rec. 670–671.

review of any judgment of the Supreme Court of a Territory or of the District of Columbia where " is drawn in question the validity of a treaty or statute of or an authority exercised under the United States." Thereafter, that provision, as modified by the Act creating the Court of Appeals for the District, February 9, 1893, c. 74, § 8, 27 Stat. 434, 436; District Code, § 233, 31 Stat. 1189, 1227, governed our appellate jurisdiction over the highest courts of the continental territories (other than Alaska) and of the District until the enactment of the Judicial Code, in which it was embodied as § 245 and, with important changes, as § 250. That our appellate jurisdiction over judgments involving the validity of acts of territorial legislatures and of the legislative body of the District, depended on the clause in the Act of 1885 allowing such review where the validity of an authority exercised under the United States had been challenged, was indicated in *Maricopa & Phoenix R. R. Co.* v. *Arizona,* 156 U. S. 347, 350–351, and *Parsons* v. *District of Columbia,* 170 U. S. 45, 49–50. The subject was fully discussed in 'more recent opinions. Thus, in *McLean* v. *Denver & Rio Grande R. R. Co.,* 203 U. S. 38, 47–48, our jurisdiction to review a judgment of the Supreme Court of New Mexico upholding the validity of a territorial law was sustained on the ground that " the validity of an authority exercised under the United States in the passage and enforcement of the law is directly challenged, and the case does involve the validity of an authority exercised under the power derived from the United States." The right to review on appeal a judgment involving the validity of an ordinance or regulation of the District of Columbia was rested upon the same ground in *Smoot* v. *Heyl,* 227 U. S. 518, 522, although the statute authorizing the District Commissioners to make regulations provided that they should " have the same force and effect within the District of Columbia as if enacted by Congress." Act

of June 14, 1878, c. 194, 20 Stat. 131. See also *Walker* v. *Gish*, 260 U. S. 447, 449.

A similar ruling was made in *Board of Public Utility Commissioners* v. *Manila Electric R. R. Co.*, 249 U. S. 262, where this Court dismissed an appeal and a writ of error to review, under § 248 of the Judicial Code, a judgment of the Supreme Court of the Philippine Islands. That section, until amended by the Act of September 6, 1916, c. 448, 39 Stat. 726, 727, authorized review by writ of error or appeal, of a judgment of the highest court of the Philippine Islands where either the validity or the construction of a statute of the United States was involved. *Reavis* v. *Fianza*, 215 U. S. 16, 21–22; *Gsell* v. *Insular Collector*, 239 U. S. 93, 94–96. The Railroad challenged an order of the Commissioners purporting to be made in execution of an Act of the Philippine Commission authorizing the city of Manila to grant a franchise ordinance passed under the powers thereby granted. This Court dismissed the appeal and writ of error for want of jurisdiction, necessarily holding "that the mere construction by the court of the franchise ordinance, and its consequent ruling that the duty did not rest on the Railroad Company to give the free transportation which the orders of the Commissioners had directed to be given" did not involve either the construction or the validity of a statute of the United States.

Obviously, the statutes of territorial legislatures, the regulations of the Commissioners of the District of Columbia, and the Philippine statutes and ordinances bear a relation to acts of Congress that is wholly comparable to that borne by municipal ordinances to the statutes passed by the legislature of a State. Congress cannot have intended that in the Act of 1925, the phrase "statute of any State" should be read as including municipal ordinances within a State while, under like circumstances, the phrase "statute of the United States" does not include

the ordinances of the District of Columbia, even where the enabling act provides that the ordinances shall have the same force as if enacted by the Congress of the United States.

Moreover, if municipal ordinances are deemed to be statutes of a State within the meaning of § 237 (a) of the Judicial Code, legislative orders of state commissions, boards, and officials must be also. Prior to the Act of 1925, judgments sustaining the validity of such orders were reviewable on writ of error as fully as judgments sustaining the validity of states and ordinances. Between the effective date of the Act of 1916 and that of the Act of 1925, this Court wrote opinions in 21 cases in which a judgment of the highest court of a State involving the validity of an order of a commission was reviewed on writ of error.[7] In none of the opinions was it stated that jurisdiction existed because an order is a statute of a State.[8] On the other hand, in *Lancaster* v. *McCarty*, 267

---

[7] In *Live Oak Water Users Association* v. *Railroad Commission*, 269 U. S. 354, the Court, while asserting its jurisdiction over judgments sustaining such orders, dismissed a writ of error, as the judgment below rested on adequate non-federal grounds.

[8] The jurisdiction was first challenged in *Bluefield Water Works & Improvement Co.* v. *Public Service Commission*, 262 U. S. 679. The Court said at p. 683: " The prescribing of rates is a legislative act. The commission is an instrumentality of the State, exercising delegated powers. Its order is of the same force as would be a like enactment by the legislature. If, as alleged, the prescribed rates are confiscatory, the order is void. Plaintiff in error is entitled to bring the case here on writ of error and to have that question decided by this Court." In *Northern Pacific Ry. Co.* v. *Department of Public Works*, 268 U. S. 39, 42, jurisdiction was assumed on the authority of the Bluefield case. In *Live Oak Water Users Association* v. *Railroad Commission*, 269 U. S. 354, 356, the Court said that " for jurisdictional purposes the order of the Commission must be treated as though an Act of the Legislature." This was said, of course, with reference to the situation under the Act of 1916, for the judgment under review was entered October 23, 1923.

U. S. 427, 430, where our jurisdiction was invoked to review, on writ of error, the judgment of a state court denying the validity of an order of the Interstate Commerce Commission, the jurisdiction was sustained on the ground that the order " is an authority exercised under the United States which by the contention of the shippers was drawn in question, and its validity denied by the state court." Can it be that, while our power to review on writ of error a judgment of a state court denying the validity of an order of the Interstate Commerce Commission rested on the " authority " clause, our power to review a judgment sustaining the validity of an order of a state commission did not? [9]

The difference between a statute and an ordinance for purposes of appellate review—a difference which rests wholly on expediency—had been acted upon by Congress half a century earlier, when it undertook to deal with the congestion of business in this Court by regulating the

---

[9] Since the effective date of the Act of 1925, no judgment of a state court has been reviewed by this Court on writ of error, where the sole claim was that a commission order was unconstitutional. In the following cases, governed by the Act of 1925, in which this Court reviewed on writ of error a judgment of a state court sustaining the validity of a commission order, the validity of the underlying statute as well as of the order was attacked: *Frost & Frost Trucking Co.* v. *Railroad Commission,* 271 U. S. 583; *Chicago, Milwaukee & St. Paul Ry. Co.* v. *Railroad Commission,* 272 U. S. 605; *Miller Lumber Co.* v. *Floyd,* 273 U. S. 672 (Per Curiam); *Fox River Paper Co.* v. *Railroad Commission,* 274 U. S. 651; *Pierce* v. *Barker,* 274 U. S. 718 (Per Curiam); *Stimson Lumber Co.* v. *Kuykendall,* 275 U. S. 207; *International Great Northern R. R. Co.* v. *Railroad Commission,* 275 U. S. 503 (Per Curiam). In *Chicago, Milwaukee & St. Paul Ry. Co.* v. *Public Utilities Commission,* 274 U. S. 344, and in *Aetna Insurance Co.* v. *Hyde,* 275 U. S. 440, the review was by certiorari. In *Aetna Insurance Co.* v. *Baker,* 276 U. S. 628, certiorari was denied. Compare *Phillips* v. *Oklahoma,* 274 U. S. 721 (Per Curiam); *Phillips* v. *Oklahoma,* 275 U. S. 489 (Per Curiam); *Missouri* v. *Public Service Commission,* 275 U. S. 489 (Per Curiam).

priority of hearings in revenue cases. Act of June 30, 1870, c. 181, 16 Stat. 176; *Davenport City* v. *Dows,* 15 Wall. 390, 392.[10]  It was reaffirmed when Congress, in 1925, withdrew the right to a direct appeal from the District Court in cases involving the validity of municipal ordinances, though allowing such an appeal in certain cases involving the validity of statutes and orders of commissions.  On the other hand, the essential identity of statutes, ordinances, and orders, where the question concerns substantive rights, has always been recognized. Since all regulations established by competent authority are laws, the comprehensive term " laws " has been used when it was desired to include all forms of legislative action.[11]  Thus, as the enactments of a subordinate body exercising legislative authority are a part of the laws of a State, an ordinance or an order is a law within the meaning of the contract clause and is state action within the prohibitions of the Fourteenth Amendment.  *North*

---

[10] Mr. Chief Justice Chase explained why the Act should be construed as applying only to statutes and not to municipal ordinances: " This preference is given, plainly enough, because of the presumed importance of such cases to the administration and internal welfare of the States, and because of their dignity as equal members of the Union. The reasons for preference do not apply to municipal corporations, more than to railroad and many other corporations." p. 392.

[11] In procedural matters—which, like jurisdiction, rest upon considerations of expediency—the difference between statutes and ordinances has been observed, in some instances even when in the legislation the more comprehensive term " laws " was used.  Such was the case in *Davenport City* v. *Dows,* supra.  Again, while municipal ordinances are " laws of the several states " within the meaning of § 34 of the Judiciary Act of 1789, 1 Stat. 73, 92, and § 721 of the Revised Statutes, they will not be judicially noticed in the federal courts; for " an ordinance is not a public statute, but a mere municipal regulation." *Robinson* v. *Denver Tramway Co.,* 164 Fed. 174, 176.  Compare *Garlich* v. *Northern Pacific Ry. Co.,* 131 Fed. 837, 839; *Choctaw, O. & G. R. R. Co.* v. *Hamilton,* 182 Fed. 117, 121.

*American Cold Storage Co.* v. *Chicago,* 211 U. S. 306, 313; *Grand Trunk Ry. Co.* v. *Railroad Commission,* 221 U. S. 400, 403; *Ross* v. *Oregon,* 227 U. S. 150, 162–163; *Lake Erie & Western R. R. Co.* v. *Public Utilities Commission,* 249 U. S. 422, 424; *Standard Scale Co.* v. *Farrell,* 249 U. S. 571, 577. For, as this Court has pointed out in *New Orleans Water Works Co.* v. *Louisiana Sugar Refining Co.,* 125 U. S. 18, 30, 31; " it is not strictly and literally true, that a law of a State, in order to come within the constitutional prohibition, must be either in the form of a statute enacted by the legislature in the ordinary course of legislation, or in the form of a constitution established by the people of the State as their fundamental law." [12]

Prior to the Act of 1925, final judgments of a district or circuit court involving the constitutional validity of a municipal ordinance could be brought directly to this Court by writ of error or appeal under § 5 of the Court of Appeals Act, Act of March 3, 1891, c. 517, 26 Stat. 826, 827–828, and § 238 of the Judicial Code, because such review was authorized " in any case that involves the construction or application of the Constitution of the United States," and " in any case in which the constitution or law of a State is claimed to be in contravention of the Constitution of the United States." *Davis & Farnum Manufacturing Co.* v. *City of Los Angeles,* 189 U. S. 207, 216; *Boise Artesian Water Co.* v. *Boise City,* 230 U. S. 84, 90; see *Standard Scale Co.* v. *Farrell,* 249 U. S. 571, 577. And likewise a case involving the constitutional validity of an

[12] It was on this statement of Mr. Justice Gray's that the Court relied in *North American Cold Storage Co.* v. *Chicago,* 211 U. S. 306, 313, where it answered a contention that a bill alleging only municipal legislative action presented no constitutional question sufficient to sustain the jurisdiction of the circuit court, by saying: " In this case the ordinance in question is to be regarded as in effect a statute of the State, adopted under a power granted it by the state legisla ce, and hence it is an act of the State within the Fourteenth Amendment."

ordinance could be brought here on writ of error to or on appeal from the Circuit Court of Appeals if the jurisdiction of the district or circuit court had been invoked in part on constitutional grounds. *City of Vicksburg* v. *Henson,* 231 U. S. 259, 267. But in 1925 Congress amended § 238 so as to confine the right to a direct appeal in cases involving the validity of state action to those which fell within the provisions of § 266—provisions which had already been construed as not including municipal ordinances. Unless the phrase "statute of any State" as used in §§ 237(a) and 240(b) of the Judicial Code as amended, includes municipal ordinances, no case from any lower court involving only the validity of a municipal ordinance can now be reviewed by this Court otherwise than upon certiorari.

When it is borne in mind that the severe limitations upon the right of review by this Court imposed by the Act of 1925 were made solely because the increase of the Court's business compelled, the reasons why Congress should have taken away the right to a review by writ of error to the highest court of a state in cases involving the validity of ordinances, while leaving unaffected the right in cases involving the validity of statutes, becomes clear. There are only 48 States. In 1920 there were 924 municipalities in the United States of more than 8,000 inhabitants.[13] The validity of ordinances of even smaller municipalities had come to this Court for adjudication.[14]

---

[13] Fourteenth Census of the United States (1920), vol. I, table 27.

[14] See, e. g., *Brennan* v. *Titusville,* 153 U. S. 289; *Wabash R. R. Co.* v. *Defiance,* 167 U. S. 88; *Wilson* v. *Eureka City,* 173 U. S. 32; *Skaneateles Water Co.* v. *Skaneateles,* 184 U. S. 354; *Western Union Telegraph Co.* v. *New Hope,* 187 U. S. 419; *Williams* v. *Talladega,* 226 U. S. 404; *Pierce Oil Corporation* v. *Hope,* 248 U. S. 498. In *Village of Terrace Park* v. *Errett,* 273 U. S. 710, and *Village of University Heights* v. *Cleveland Jewish Orphans' Home,* 275 U. S. 569, the Court denied petitions for certiorari in cases where Circuit Courts of Ap-

The increasingly complex conditions of urban life have led, as this Court noted in *Village of Euclid* v. *Ambler Realty Co.*, 272 U. S. 365, 386–387, to a corresponding increase in municipal police legislation. Recently, two classes of municipal ordinances, new in character—those relating to zoning and those relating to motor vehicles—had become the subject of many controversies. The constitutionality of these ordinances can rarely be determined simply by applying a general rule. The Court must consider the effect of the ordinance as applied. As the validity of the particular ordinance depends ordinarily upon special facts,[15] these must be examined whenever there is jurisdiction. *Dahnke-Walker Milling Co.* v. *Bondurant*, 257 U. S. 282. Though no burdensome factual inquiry is involved, the controversy may often be of trifling significance, as in the case at bar. Thus, persuasive reasons existed why Congress should have denied, in 1925, review by writ of error in cases which involved only the validity of a municipal ordinance.

If, by striking out from § 237 of the Judicial Code the clause " or an authority exercised under any State," Congress did not exclude from review by writ of error cases involving the validity of municipal ordinances and commission orders, it wholly failed to accomplish what, in view of the statements made to it in regard to the

peals had held the zoning ordinances of small suburban districts to be unconstitutional as applied to the respondents. If ordinances are statutes of a State, these cases could have been brought here by writ of error under § 240(b). In *Gorieb* v. *Fox*, 274 U. S. 603, a judgment of a state court sustaining a zoning ordinance was reviewed by certiorari. Compare *Township of Maplewood* v. *Margolis*, 276 U. S. 617, certiorari denied; *Nectow* v. *City of Cambridge,* post, p. 183.

[15] The Court has noted this dependence with respect both to zoning ordinances and to bus regulations. See *Euclid* v. *Ambler Realty Co.*, 272 U. S. 365, 395; *Hammond* v. *Schappi Bus Line*, 275 U. S. 164, 170.

effect of the amendment,[16] must be deemed to have been its purpose in so amending the section. That is, to relieve this Court, in many cases, of the burden of obligatory review. For, other than these, there had been considered by this Court, in the nine years between the effective dates of the Jurisdictional Acts of 1916 and 1925, and decided with opinions, not more than eight cases involving the validity of an authority exercised under a State or under the United States.[17] On the other hand the forty cases in which judgments of state courts sustaining municipal ordinances or commission orders had been reviewed on writ of error, had entailed a burden out of all proportion to their number. The evidence introduced to establish the facts in cases involving the validity either of orders or of municipal ordinances is often both volum-

[16] See Hearing before a Subcommittee of the Committee on the Judiciary of the United States Senate, 68th Cong., 1st Sess., on S. 2060, p. 35; Hearing before the Committee on the Judiciary of the House of Representatives, 68th Cong., 2d Sess., on H. R. 8206, p. 13.

[17] In only three cases in which opinions were written, aside from those involving municipal ordinances and commission orders, does jurisdiction appear to have been exercised under the clause in the Act of 1916 allowing a writ of error in cases where the validity of an authority exercised under a State has been challenged and sustained: *Schwab* v. *Richardson*, 263 U. S. 88; *Love* v. *Griffith*, 266 U. S. 32; *Appleby* v. *Delaney*, 271 U. S. 403. Possibly, under the view announced by the Court, even such state action as was involved in these cases amounts to " a statute of a state." In five cases jurisdiction seems to have been based on the clause allowing a writ of error where the validity of an authority exercised under the United States has been denied: *American Express Co.* v. *Caldwell*, 244 U. S. 617; *Northern Pacific Ry. Co.* v. *North Dakota*, 250 U. S. 135; *Dakota Central Telephone Co.* v. *South Dakota*, 250 U. S. 163; *Davis* v. *Newton Coal Co.*, 267 U. S. 292; *Lancaster* v. *McCarty*, 267 U. S. 427. The first and the last of this group concerned orders of the Interstate Commerce Commission which, presumably, must be held to be statutes of the United States if the orders of state commissions are statutes of a state. Perhaps the other three as well were statutes of the United States under the view now taken by the Court.

inous and conflicting.[18]   Condensation of the evidence is
not required, as in cases coming from the lower federal
courts.   See Equity Rule 75 (b), 226 U. S. Appendix 23;
Rule 7 (2), 266 U. S. 657–658.   Compare *Barber Asphalt
Paving Co.* v. *Standard Asphalt & Rubber Co.*, 275 U. S.
372.   Although the evidence is often conflicting, findings
of fact are not required.   Compare *Chicago, Milwaukee
& St. Paul Ry. Co.* v. *Tompkins*, 176 U. S. 167, 179;
*Lincoln Gas & Electric Light Co.* v. *Lincoln*, 223 U. S.
349, 364; *City of Hammond* v. *Schappi Bus Line*, 275
U. S. 164, 171.   Congress must have had the threatening
volume and the heavy burden of this litigation in mind
when it struck from § 237 of the Judicial Code the words
" or an authority exercised under any State."

From the decision of *Weston* v. *City Council of Charles-
ton*, 2 Pet. 449, 463–464, in which Mr. Chief Justice
Marshall rested the jurisdiction of this Court to review
the judgments of state courts involving the validity of
municipal ordinances upon the clause " or an authority
exercised under any State," to the passage of the Act of
1925, ninety-six years elapsed.   During that period the
Court wrote opinions in a multitude of cases in which
that specific jurisdiction was exercised.   In only two of
them has there been found any statement that the juris-
diction could be sustained on the ground that a munici-
pal ordinance is a statute of a State, within the meaning
of § 25 of the Judiciary Act of 1789 or its later reenact-

---

[18] Thus, in *Southwestern Bell Telephone Co.* v. *Public Service Com-
mission*, 262 U. S. 276, the record was 685 pages in length.   In *Blue-
field Water Works & Improvement Co.* v. *Public Service Commission*,
262 U. S. 679, the record extended over 1398 pages.   The record in
*Northern Pacific Ry. Co.* v. *Department of Public Works*, 268 U. S.
39, contained 1131 pages in addition to numerous exhibits.   In *Ham-
mond* v. *Schappi Bus Line*, 275 U. S. 164, and *Hammond* v. *Farina
Bus Line & Transportation Co.*, 275 U. S. 173, the Court found itself
compelled to remand to the District Court in order for that court to
make proper findings of fact.

ments. These two opinions were written at successive terms by the same member of the Court. *Atlantic Coast Line R. R. Co.* v. *Goldsboro,* 232 U. S. 548, 555; *Reinman* v. *Little Rock,* 237 U. S. 171, 176. An examination of the record and briefs in the two cases seems to make it clear that the statements were obiter and were made inadvertently. No question of the jurisdiction of this Court under § 237 of the Judicial Code was raised or discussed by counsel in either case; and this Court could not, under the legislation then in force, have entĕrtained a doubt as to the existence of the jurisdiction. Neither opinion of the Court refers to *Weston* v*ⱼ City Council of Charleston,* 2 Pet. 449, 463–464, or to *Home Insurance Co.* v. *City Council of Augusta,* 93 U. S. 116, 121—the cases which, on full consideration, had settled that the basis of our jurisdiction was the clause relating to the validity of an authority. Neither refers to *McLean* v. *Denver & Rio Grande R. R. Co.,* 203 U. S. 38, 47–48, or to *Smoot* v. *Heyl,* 227 U. S. 518, 522—the cases which had recently confirmed that ruling. There was obviously no intention to overrule these cases.

The only authority cited in support of the statement in the *Goldsboro* and *Little Rock* cases, *Williams* v. *Bruffy,* 96 U. S. 176, 183, furnishes no basis for them. That case involved an act of the Congress of the Confederate States— a body whose legislation would obviously be described in common speech as " statutes." It was conceded that the particular act was a " statute." The question was whether it was a statute " of any State." [19] The Court

---

[19] That the sole question discussed was whether the act of the Congress of the Confederate States was an act of " any State " appears from the briefs on file in the office of the Clerk. See Supplemental Brief of Enoch Totten for the Plaintiff in Error, pp. 10–11; Brief of Henry W. Garnett for the Defendant in Error, p. 3; Brief of William A. Maury, as *amicus curiae,* pp. 4, 5, 7. The question was thus stated by Mr. Maury on p. 5 of his brief: " Upon what ground, then, can it

held that since the enactment had been given the force of law in Virginia, it was as much the action of that State as if it had been originally passed by an authorized legislative body. In being so adopted by Virginia the enactment clearly did not lose the quality which it had had from its inception, namely, that of being a " statute." It was in this connection that Mr. Justice Field said: "Any enactment, from whatever source originating, to which a State gives the force of law is a statute of the State, within the meaning of the clause cited relating to the jurisdiction of this court." This language was used with reference to the acts of an irregular legislative body whose enactments would be commonly described as " statutes."[b] It had no reference to the acts of a regular legislative body whose enactments would never be characterized as statutes, in ordinary speech. That Mr. Justice Field would not so have applied it, is clear. For in the term of Court preceding that in which *Williams* v. *Bruffy* was decided, he had participated in the decision in *Home Insurance Co.* v. *City Council of Augusta,* 93 U. S. 116, 121, in which the Court had plainly indicated that a municipal ordinance was not a " statute of any State."

The dicta concerning our jurisdiction in *Atlantic Coast Line R. R. Co.* v. *Goldsboro,* and in *Reinman* v. *Little*

be maintained that a statute of, or authority exercised under, the hostile *de facto* Government of Virginia was the statute of or authority of a State, in the sense of the law which is this Court's commission to take cognizance of appeals from the state tribunals? (5. How., *Scott* vs. *Jones*)." The case cited by Mr. Maury, 5 How. 343, 376, held that the statutes of an unorganized political body were not statutes " of a State " within the meaning of § 25 of the Judiciary Act, although that body later became a State. In *Miners Bank* v. *Iowa,* 12 How. 1, a territorial statute was held not to be a statute " of a State " within § 25, though the Territory had since become a State. The language in *Ford* v. *Surget,* 97 U. S. 594, 603, 604, and *Stevens* v. *Griffith,* 111 U. S. 48, 50, also makes clear the exact point of the decision in *Williams* v. *Bruffy.*

*Rock,* have never been repeated in any later case dealing with municipal ordinances, even where the decisions in the two cases have been relied upon. Some care seems to have been taken not to repeat the expression that a municipal ordinance was a statute of a State. See *Thomas Cusack Co. v. Chicago,* 242 U. S. 526, 529; *Zucht* v. *King,* 260 U. S. 174, 176. To construe the phrase "statute of any State" as applying to a municipal ordinance disregards the common and appropriate use of the words; ignores decisions which for nearly a century have governed our jurisdiction to review judgments of state courts sustaining the validity of such ordinances; and tends to defeat the general purpose of the Act of 1925 " to relieve this Court by limiting further the absolute right to a review by it." *Moore* v. *Fidelity & Deposit Co.,* 272 U. S. 317, 321; *Smith* v. *Wilson,* 273 U. S. 388, 390.[20] It completely frustrates the particular purpose which Congress must have had in striking from § 237 the clause " or an authority exercised under any state." [21] The trival character of the substan-

---

[20] Much weight was given to this purpose in construing earlier acts reducing our jurisdiction. Compare *McLish* v. *Roff,* 141 U. S. 661, 666; *Robinson* v. *Caldwell,* 165 U. S. 359, 362; *American Sugar Refining Co.* v. *New Orleans,* 181 U. S. 277, 281, all construing the Circuit Court of Appeals Act, March 3, 1891; c. 517, 26 Stat. 826; *American Security & Trust Co.* v. *District of Columbia,* 224 U. S. 491, 495, construing § 250 of the Judicial Code; *Inter-Island Steam Navigation Co., Ltd.,* v. *Ward,* 242 U. S. 1, construing § 246 of the Judicial Code, as amended by the Act of January 28, 1915, c. 22, 38 Stat. 803.

[21] Since the effective date of the Act of 1925, judgments of state courts sustaining the validity of municipal ordinances have been reviewed on writ of error in a number of cases. *Beery* v. *Houghton,* 273 U. S. 671 (Per Curiam); *Ohio ex rel. Clarke* v. *Deckebach,* 274 U. S. 392; *Angelo. v. Winston-Salem,* 274 U. S. 725 (Per Curiam); *Bloecher & Schaaf* v. *Baltimore,* 275 U. S. 490 (Per Curiam); *Kresge Co.* v. *Dayton,* 275 U. S. 505 (Per Curiam). Compare *Natchez* v. *McNeely,* 275 U. S. 502 (Per Curiam). But in none of them did

tive question presented by this case—in which a writ of certiorari, if applied for, would plainly not have been granted—illustrates the wisdom of Congress in limiting our jurisdiction on writ of error.

counsel question the jurisdiction of this Court, or call to our attention the significance of the amendment of § 237 made by the Act of 1925. It is well settled that the exercise of jurisdiction under such circumstances is not to be deemed a precedent when the question is finally brought before us for determination.· *United States* v. *More,* 3 Cranch, 159, 172; *Snow* v. *United States,* 118 U. S. 346, 354;·*Cross* v. *Burke,* 146 U. S. 82, 86; *Louisville Trust Co.* v. *Knott,* 191 U. S. 225, 236; *Arant* v. *Lane,* 245 U. S. 166, 169.