## THE METON.

### JENSEN v. METON S. S. CO.

#### No. 1419.

District Court, S. D. Texas, Galveston Division.
June 6, 1932.

Harris & Watkins, of Galveston, Tex., for libelant.

Lee M. Sharrar and Royston & Rayzor, all of Houston, Tex., for respondents.

KENNERLY, District Judge.

This is a libel in rem by libelant, Jens Jensen, against the steamship Meton, and in personam against its owner, the Meton Steamship Company, for damages for an alleged injury alleged to have occurred to libelant on or about July 22, 1931, on board the steamship at the dock of the Galveston Dry Dock & Construction Company in Galveston Bay, near Galveston, Tex., in this district. The facts shown by the evidence are:

(a) About July 14, 1931, the owner of the steamship Meton contracted with the Galveston Dry Dock & Construction Company to make certain repairs, etc., to such steamship. The pertinent portion of such contract reads as follows: "We hereby propose to furnish all labor and materials for, and perform all work on, the S/S 'Meton' and provide dry dock, berth, wharfage, towage and other service and facilities in accordance with, and as required by the proposals, plans, specifications and schedules, upon conditions, however, that we shall not be liable in respect to the said vessel, directly or indirectly in contract, tort or otherwise, to its owners, charterers or underwriters for any injury to such vessel, its cargo, equipment, or movable stores, or for any consequences thereof, unless such injury is caused by our negligence or the negligence of our employees, and in no event shall our aggregate liability to all

such parties in interest for damage sustained by them, as a result of such injury, exceed the sum of Three Hundred Thousand Dollars, notwithstanding anything to the contrary contained in such proposals, plans, specifications and schedules."

(b) Such repairs, which were quite extensive, were to be made, and were made, while the steamship was in "wet dock," i. e., still in the water, and included the grinding of certain valves on, or connected with, its three boilers, referred to for convenience as the port boiler, starboard boiler, and center boiler. These boilers each had blow valves connected with, and opening into, two pipes or lines running across the steamship, which were designed for use, and used, in blowing or cleaning out the boilers. The blow valve or valves, and/or the mechanism connected therewith, leading from the center boiler to one of these pipes or lines, was dismantled or removed, preparatory to such repairs, thus creating an opening from the center boiler into the room or space surrounding it.

(c) Libelant was an employee of the dock and construction company, and while, on or about July 22, 1931, engaged in working in such room or space, on the water valves of the center boiler and near such opening, was injured by hot steam and hot water which suddenly and without warning came from such center boiler through such opening. At the time, both the center boiler and the starboard boiler were dead, i. e., had no steam or hot water therein, but the port boiler was not dead, i. e., contained hot water and steam, and was being maintained "alive" for use in maneuvering and protecting the steamship, which, as stated, was still in the water.

(d) The hot water and steam which injured libelant came from the port boiler, and was caused by some person, whose identity is not shown nor disclosed by the evidence, suddenly opening the blow valve leading from the port boiler to the other pipe or line, permitting hot water and steam to go into such other pipe or line, thence into the center boiler, and thence out through such opening upon libelant.

(e) The dock and construction company had several employees aboard the steamship, and, with some exceptions, the steamship's crew was aboard. The person who opened such blow valve may have been one of the crew of the steamship company, or an employee of the dock and construction company, or may have been an outsider. As stated, neither the evidence of libelant, nor that of the respondent, discloses his identity. The port boiler, however, was still in charge of the steamship's crew, and was being used as above indicated.

(f) Libelant was in no manner negligent, and the evidence does not show that the dock and construction company was in any manner negligent.

(g) The owners, operators, master, officers, and/or crew of the steamship Meton provided libelant a reasonably safe place in which to work, but they were negligent in permitting steam and/or hot water from the live boiler (port boiler) to enter the center boiler and to reach the place where libelant was at work; were also negligent in not using proper care to prevent steam and/or hot water from such live boiler (port boiler) from entering the center boiler and reaching the place where libelant was at work; and were negligent in not keeping proper supervision of the live port boiler, and in permitting hot water and/or steam to pass therefrom to the place where libelant was working. Such negligence was the proximate cause of libelant's injury.

I do not find that the owners, operators, master, and/or officers of the steamship Meton kept an inefficient, careless, or incompetent crew, but I find they were negligent, as above indicated.

Since I do not find that the libelant's injury was caused by a leaky valve, I do not think that the owners, operators, master, officers, and/or crew of the steamship Meton were negligent in not warning libelant thereof, nor were they negligent in not blocking same off.

(h) I find that libelant was severely injured, suffered great pain, lost much time, and incurred medical bills, etc., and that the sum of $4,000 would reasonably compensate him for such injury, loss of time, medical bills, etc.

■ 1. Whether libelant has, or not, a claim against the Galveston Dry Dock & Construction Company under the Longshoremen's and Harbor Workers' Compensation Act (title 33, USCA § 901 et seq.) is immaterial. He may prosecute this suit and recover herein. Section 933, title 33, USCA.

■ 2. My conclusion is that, under the law, libelant is entitled to recover against respondent. This respondent strenuously combats.

Among other cases, respondent points to Luckenbach S. S. Co. v. Buzynski (C. C. A.) 19 F.(2d) 871, 874. After discussing the facts, it is there said: "On the whole case, it is evident that libelant has failed to prove

negligence or breach of duty by either respondent. Where there are two defendants, either or both of whom may be liable, it is necessary to show with reasonable certainty by a clear preponderance of the evidence in which the fault lies, perhaps more definitely than when there is but a single defendant."

The case here is different. Here, while there is no evidence pointing out the identity of the person who opened the blow valve on the port boiler, there is evidence unmistakably showing respondent to have been negligent. The case comes more within the rule laid down in Luckenbach v. Buzynski by the Supreme Court (Buzynski v. Luckenbach S. S. Co., 277 U. S. 227, 48 S. Ct. 440, 441, 72 L. Ed. 861). After discussing the liability of the contracting company for the acts of a fellow servant of Buzynski, the Supreme Court uses this language: "The view of the Circuit Court of Appeals that the Contracting Company would not be liable for the negligence of a fellow servant, was erroneous, and its judgment must be reversed. But since it did not determine whether the accident was in fact due to such negligence, or to some other cause, the case will be remanded to that court with instructions to determine this question and take further proceedings in conformity with this opinion."

In other words, the Supreme Court held that the rule laid down in the case by the Circuit Court of Appeals was not applicable, if the negligence of either company be shown. This seems likewise to have been the view of the Circuit Court of Appeals. See Supplemental Opinion (C. C. A.) 31 F. (2d) 1015, 1016. See, also, instructive case, Actiesselskabet Ingrid v. Central Railway Company (C. C. A.) 216 F. 72, 75, L. R. A. 1916B, 716.

It follows that libelant is entitled to recover from respondent the sum of $4,000. Let a decree be drawn accordingly.